[Nos. 3378-3-III; 3459-3-III.   Division Three.   December 4, 1980.]

JAMES H. WILSON, *Appellant, v.* BRAND S CORPORA-
TION, *Respondent.*

744

*Douglas D. Lambarth* and *Lambarth & Associates,* for appellant.

*Dennis R. Scott,* for respondent.

GREEN, C.J.—In 1970 James H. Wilson purchased 40 acres of land in Pend Oreille County. Five acres contained a slate deposit. After excavating and selling some of the slate, he went to Alaska to earn money so he could expand his operation. When he returned he found that Brand S Corporation had built a road through the slate deposit. Some trees and slate were piled beside the road.

Mr. Wilson brought this trespass action against Brand S for damages to the trees and slate deposit. At trial Brand S admitted the trespass and a jury awarded $300, triple the value of the destroyed timber. The court granted a directed verdict in favor of Brand S on the question of damage to the slate deposit. Mr. Wilson appeals.

First, Mr. Wilson assigns error to the court's refusal to submit the issue of slate damage to the jury. The court did

so because he failed to prove that the slate damage diminished the market value of the entire 40–acre tract.[1] He contends the proper measure of damages is the fair market value of the damaged slate. We agree.

■■ The purpose of awarding damages for injury to property in tort actions is to place the injured party as nearly as possible in the condition in which he would have been had the wrong not occurred. *Penney Farms, Inc. v. Heffron,* 24 Wn. App. 150, 152, 599 P.2d 536 (1979); *Burr v. Clark,* 30 Wn.2d 149, 158, 190 P.2d 769 (1948). Damages are not precluded because they fail to fit some precise formula. *Massey v. Tube Art Display, Inc.,* 15 Wn. App. 782, 551 P.2d 1387 (1976). On the contrary:

> [W]here a part of the real property is destroyed, the loss may be estimated upon the diminution in the value of the premises, if any results, or upon the value of the part severed or destroyed; and . . . the *measure of damages should be adopted which would prove most beneficial to the injured party.*

(Italics ours.) *Marrion v. Anderson,* 36 Wn.2d 353, 355, 218 P.2d 320 (1950). *See also Penney Farms, Inc. v. Heffron, supra; Pearce v. G.R. Kirk Co.,* 22 Wn. App. 323, 328, 589 P.2d 302 (1979); *DeYoung v. Swenson,* 6 Wn. App. 452, 454, 493 P.2d 1247 (1972). The appropriate measure of damages depends upon proof that the item damaged is severable and its value is distinct from the value of the land. Restatement (Second) of Torts § 929, comments *f* and *g* (1979);[2] D. Dobbs, *Remedies* § 5.2, at 327–28 (1973). Thus, where minerals are destroyed, the proper measure of damage is the value of the minerals. *United States v. Marin Rock &*

---

[1]Mr. Wilson admitted the property was recreational and the road did not decrease its value.

[2]Thus, the value of destroyed buildings, crops, and timber is recoverable. *McCurdy v. Union Pac. R.R.,* 68 Wn.2d 457, 466, 413 P.2d 617 (1966); *Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966); *Butler v. Anderson,* 71 Wn.2d 60, 66, 426 P.2d 467 (1967); *Penney Farms, Inc. v. Heffron, supra.* However, if the property destroyed has no value separate and apart from the realty, loss can be measured by diminution in the value of the land, *Burr v. Clark, supra* at 158.

*Asphalt Co.,* 296 F. Supp. 1213 (C.D. Cal. 1969); *Whittaker v. Otto,* 248 Cal. App. 2d 666, 56 Cal. Rptr. 836 (1967); D. Dobbs, *Remedies* § 5.2, at 321 (1973).

Mr. Wilson submitted testimony indicating the quantity of slate destroyed, its market value in place, and production costs. Much of the damaged slate had been severed and moved in the construction of the road and other slate had been cracked and thereby severed by heavy construction equipment. Evidence of the value of the slate thus severed was offered and the issue was properly for the jury even though there was no diminution in the overall value of the land. *Smithrock Quarry, Inc. v. State,* 60 Wn.2d 387, 374 P.2d 168 (1962).

We decline to follow the rule applied in *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946), and *Armstrong v. Seattle,* 180 Wash. 39, 38 P.2d 377, 97 A.L.R. 826 (1934), urged by Brand S. Those are condemnation cases and are distinguishable. There it was held that where part of a tract of land is taken, the value of that part is the difference between the fair market value of the land before and after the taking. However, those cases were concerned with earth and gravel which are generally regarded as part of the land. Here we are concerned with slate, a stone, which is more in the nature of a mineral. *See* Annot., 97 A.L.R. 830 (1935). Where minerals are taken, courts in condemnation proceedings follow the general rule that the measure of damage is the value of the minerals. *See* 40 A.L.R. Fed. § 4, at 670 (1978). Consequently, even under condemnation rules, slate damage would be allowed Mr. Wilson.

█ Second, it is argued the court erred in excluding evidence of lost profits from retail sales of the slate and from products Mr. Wilson planned to sell.[3] We disagree. Although it is true that, as contended, the amount of damages need not be proved with mathematical exactness, *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66

---

[3]He testified he planned to produce stepping–stones and hearths from the slate.

Wn.2d 469, 476, 403 P.2d 351 (1965); *Lamphiear v. Skagit Corp.,* 6 Wn. App. 350, 361–62, 493 P.2d 1018 (1972), the fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss. *Pappas v. Zerwoodis,* 21 Wn.2d 725, 735, 153 P.2d 170 (1944); *B. & B. Farms, Inc. v. Matlock's Fruit Farms, Inc.,* 73 Wn.2d 146, 151, 437 P.2d 178 (1968). Mr. Wilson offered to prove that he had a yard to store the slate, had developed retail connections, and had the basic knowledge to start production. Although he demonstrated that he intended to enter the retail market, his work on the property had been exploratory prior to the time the trespass occurred. The evidence of profit was insubstantial and speculative. Therefore, it was properly excluded. Moreover, if Mr. Wilson were allowed damages on the basis of lost profits in addition to the value of the slate, he would receive a double recovery which is contrary to the principle of compensatory damages. There was no error.

Finally, Mr. Wilson contends the court did not provide him with adequate notice to controvert the application of Mr. Greene, a nonresident attorney, to participate in the trial, in violation of APR 7(a).[4] He further contends the court abused its discretion in granting permission to Mr. Greene to participate in the trial because he violated the Code of Professional Responsibility by communicating or causing another to communicate "with a party he knows to be represented by a lawyer in that matter" without that

---

[4]APR 7(a) provides:

"(1) No person shall appear as attorney or counsel in any of the courts of this state, unless he is an active member of the state bar: Provided, that a member in good standing of the bar of any other state who is a resident of and who maintains a practice in such other state may, with permission of the court, appear as counsel in the trial of an action or proceeding in association only with an active member of the state bar, who shall be the attorney of record therein and responsible for the conduct thereof and shall be present at all court proceedings.

"(2) Application to appear as such counsel shall be made to the court before whom the action or proceeding in which it is desired to appear as counsel is pending. The application shall be heard by the court after such notice to the adverse parties as the court shall direct; and an order granting or rejecting the application made, and if rejected, the court shall state the reasons therefor."

lawyer's consent. (CPR) DR 7-104. We disagree with both contentions.

██ ██ Granting an attorney's application to practice law in Washington is within the discretion of the trial court. *State v. Brown,* 9 Wn. App. 937, 515 P.2d 1008 (1973). APR 7(a)(2) provides that the "application shall be heard by the court after such notice to the adverse parties as the court shall direct . . ." Although Mr. Greene's application was not submitted in writing, the court examined him prior to trial. Mr. Wilson has not shown how he was prejudiced by lack of formal notice of that hearing. He knew Mr. Greene had assisted Mr. Scott, the Washington attorney, throughout the proceedings. Moreover, on three separate occasions he moved the court to impose sanctions if Mr. Greene was to participate in trial. The court did not abuse its discretion in determining that formal notice was not necessary.

Nor did the court err in allowing Mr. Greene to participate in trial. Mr. Greene stated in an affidavit that Mr. Bentley, the manager of Brand S, informed him he wished to negotiate directly with Mr. Wilson. Mr. Greene told Mr. Bentley he could not communicate with anyone other than the plaintiff's attorney but could not prevent Mr. Bentley from proceeding as he pleased. He told the court he did not advise Mr. Bentley to contact Mr. Wilson. The evidence does not show such impropriety on Mr. Greene's part that the court abused its discretion in allowing him to proceed.

In light of our determination, we need not consider the contention relating to witness fees.

Reversed and remanded for determination of the damage, if any, to the slate deposit in accordance with this opinion.

McINTURFF and ROE, JJ., concur.

Reconsideration denied December 30, 1980.

Review denied by Supreme Court March 13, 1981.