[No. 47902–0.   En Banc.   August 19, 1982.]

ROBERT A. HANER, *Respondent,* v. QUINCY FARM
CHEMICALS, INC., *Defendant,* COLUMBIA
PRODUCERS, INC., *Petitioner,* OLIN
CORPORATION, *Respondent.*

Ries & Kenison, by Jerry J. Moberg, for petitioner.

Collins & Hansen, by Clifton W. Collins, for respondent Haner.

Bogle & Gates, by E. McDuff Archibald and Dale Ramerman, for respondent Olin Corp.

*Kenneth O. Eikenberry, Attorney General, Thomas L. Boeder, Senior Assistant,* and *Jon P. Ferguson* and *John R. Ellis, Assistants,* amici curiae for respondents.

DOLLIVER, J.—This action was brought by plaintiff Robert Haner, a farmer, to recover damages for the sale to him of defective wheat seed. Defendant Columbia Producers, Inc., had treated the seed with Terra–Coat, a fungicide manufactured by defendant Olin Corporation. A leak in the seed treating machine caused the wheat seed to be over-treated, resulting in partial sterility. Columbia tested one sample of wheat seed from the defective batch and found it to have a germination rate of 83 percent. Columbia's usual practice when wheat seed tested at less than 85 percent was to advise customers of the fact and recommend a higher-than–usual planting rate. Nonetheless, Columbia labeled the seed as having a germination rate of 85 percent without conducting further tests. Tests conducted later by others on seed treated later in the year revealed germination rates as low as 53 percent.

In the fall of 1975, Haner ordered 42,000 pounds of seed from Quincy Farm Chemicals, which company is not a party to the appeal. Quincy delivered 21,000 pounds of its own seed and 21,000 pounds of the defective seed obtained from Columbia. Haner planted the seed on 410 acres in three adjacent irrigation circles. One circle was planted with only the good Quincy seed. The other two circles were planted partially with the good seed and partially with the defective Columbia seed.

In March 1976, Haner realized the Columbia seed was not growing properly. Haner's farm manager testified he contacted the local extension agent who advised the affected area be reseeded, using about 45 pounds of seed per acre. Haner reseeded with about 42 pounds of seed per acre. The extension agent testified that he would usually recommend 60 pounds, but he could not recall what he had recommended to the farm manager. The trial court, in a challenged finding of fact, found that Haner followed the

extension agent's advice. The replanting was spring wheat, which does not produce as high a yield as winter wheat.

Haner harvested both types of wheat together, which was the most efficient way of harvesting. As a result, his total yield represented an average from the good and the defective seed. Haner was able to estimate roughly the yield of each area as he was harvesting.

Haner brought suit for lost production against Quincy. Quincy brought a third party complaint against Columbia. Columbia in turn brought a third party complaint against Olin, alleging that the defective seed resulted from defective chemicals manufactured by Olin.

After a trial without a jury, the court gave judgment for Haner against Quincy for lost production. It estimated the lost production from the yield obtained by neighboring farmers and from Haner's estimate as he was harvesting. It further found a violation of the Consumer Protection Act, RCW 19.86.020, and gave Haner judgment for attorney fees and $1,000 "additional damages". Columbia was ordered to indemnify Quincy for the amount of the judgment awarded to Haner. The court found no negligence or breach of warranty on the part of Olin and dismissed the complaint of Columbia against Olin with prejudice. Attorney fees were awarded to Olin against Columbia.

The Court of Appeals affirmed, unanimously holding there was an adequate basis for computation of damages and that the award of attorney fees to Olin was proper. The court divided (Roe, J., concurring in part, dissenting in part) on the question of whether there was a violation of the Consumer Protection Act. *Haner v. Quincy Farm Chems., Inc.*, 29 Wn. App. 93, 627 P.2d 571 (1981).

We accepted the petition for review by Columbia so as to consider these issues:

1. Was the evidence sufficient to provide a reasonable basis for estimating damages?

2. May attorney fees be awarded a nonnegligent third party defendant as consequential damages against a negligent third party plaintiff, where the original plaintiff did

not sue the third party defendant?

3. Did Columbia's conduct give rise to a private right of action under RCW 19.86.020?

■ The rule in Washington on the question of the sufficiency of the evidence to prove damages is: "[T]he fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss." *Wilson v. Brand S Corp.*, 27 Wn. App. 743, 747, 621 P.2d 748 (1980). Mathematical exactness is not required. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 476, 403 P.2d 351 (1965). The basis of the claim by Columbia that the award of damages is not supported by the evidence as well as the response to this argument is delineated by the Court of Appeals and need not be repeated here. We concur with the Court of Appeals that there was ample evidence to support the award of damages by the trial court.

On the matter of the attorney fees awarded to Olin, we reverse the Court of Appeals. While the general rule is that unless there is a contract, statute or recognized ground of equity, attorney fees will not be awarded as a part of the costs of litigation (*State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 111 P.2d 612 (1941)), an exception was set forth in *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 195, 390 P.2d 976 (1964):

> [W]here the acts or omissions of a party to an agreement or event have exposed one to litigation by third persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages.
> . . .
> The fulcrum upon which the rule balances, then, is whether the action, for which attorney's fees are claimed as consequential damages, is brought or defended by third persons—that is, persons not privy to the contract, agreement or events through which the litigation arises.

*Armstrong,* at 195–96. In *Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136 (1975), the test was further articulated by listing three requirements necessary to create liability:

(1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.,* the wrongful act or omission of A toward B.

Since Olin was not privy to the sale of the overtreated seed by Columbia, the Court of Appeals found neither *Armstrong* nor *Manning* to be inconsistent with the award of attorney fees to Olin. In reaching this result, the Court of Appeals stated "Recovery should not depend upon who brought Olin into the action" (*cf. Universal Underwriters Ins. Co. v. Security Indus., Inc.,* 391 F. Supp. 326 (W.D. Wash. 1974)), and referred to our statement that the liberal rules of joinder are "to encourage the adjudication of the rights and claims of all parties in one proceeding.'" *Haner, supra* at 103, citing *Wells v. Aetna Ins. Co.,* 60 Wn.2d 880, 882, 376 P.2d 644 (1962).

We view the matter from a somewhat different perspective and find the award of attorney fees to Olin to be a misapplication of *Armstrong* and *Manning.* If, in the test articulated by *Manning v. Loidhamer, supra,* A is Columbia, B is Haner, and C is Olin, it will be seen immediately that the second element of the requirement has not been met: Except as a third party to the lawsuit, Olin is not involved in an action by Haner. The action against Olin was by Columbia; indeed, Olin successfully resisted an effort by Haner to bring suit against it. In its action against Olin, Columbia claimed breach of warranty. Although this claim was denied by the trial court, there is no suggestion the action was frivolous or that it was brought in other than good faith. The absolution of Olin of negligence is not determinative in assessing attorney fees against Columbia. *Manning v. Loidhamer, supra* at 773–74.

The rule is clear: for Olin to prevail, the action must have been brought against it by Haner. This did not occur. *See Vincent v. Parkland Light & Power Co.,* 5 Wn. App. 684, 491 P.2d 692 (1971); *Koch v. Seattle,* 9 Wn. App. 580, 513 P.2d 573 (1973). In oral argument, Olin conceded that if

Columbia had not joined Olin in this suit but had brought a separate action, Olin would not have been able to claim attorney fees. We believe the virtue of judicial economy entailed in joinder outweighs any desirability of extending the *Armstrong* rule as was done by the Court of Appeals.

For a private individual to initiate an action under the Consumer Protection Act, RCW 19.86, "the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest." *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). Here the first two requirements are met. It is unquestioned the conduct of Columbia was within the sphere of trade or commerce. For the conduct to be unfair or deceptive does not require that intent be shown if the action has the capacity to deceive a substantial portion of the purchasing public. *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 551 P.2d 1398 (1976). The purchasers of seed treated by Columbia reasonably expected the germination rate to be as labeled. The rate was less than the 85 percent germination rate on the label. There was a deceptive act.

In *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976), the court held an act or practice must have an impact upon the public interest in order to be prohibited under the Consumer Protection Act. In *Anhold v. Daniels, supra* at 46, we explained that

> the presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

The opinion of Judge Roe points out the lack of inducement of Haner by the deceptive acts or practices of Columbia to buy the seed:

> Here, there was no showing that there were any

inducements, deceptive advertisements, sales techniques, or false representations which induced the sale. How can that requirement cover the delivery in good faith to a third person of seed for planting which, unknown to the seller, was overtreated or overcoated with a fungicide, and only in one batch through the malfunctioning of the coating machine?

*Haner,* at 107 (Roe, J., concurring in part, dissenting in part). Furthermore, in plaintiff's brief and at oral argument counsel for Haner conceded the mislabeled 85 percent germination rate (which was actually 83 percent) was not an inducement to Haner to purchase the seed. Since there was no inducement, a public interest has not been demonstrated.

Nevertheless both plaintiff and amicus curiae urge this court to find a per se violation of the Consumer Protection Act. Although the Court of Appeals did not reach the issue, the trial court found there was a breach of seller's warranties under the Uniform Commercial Code (UCC) (RCW 62A.2–314), and thus a per se violation of the Consumer Protection Act.

*State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972) was the first case in which a per se violation was discussed. Defendants annually disseminated in Washington 2½ million advertisements on the Reader's Digest Sweepstakes. In an action brought by the Attorney General under RCW 19.86.080, the court found the Reader's Digest Sweepstakes to be a violation of Const. art. 2, § 24 which prohibited lotteries and RCW 9.59.010 which made the operation of a lottery a criminal offense. The court went on to say, "What is illegal and against public policy is per se an unfair trade practice. The Sweepstakes is a lottery and therefore is per se unfair." *State v. Reader's Digest Ass'n, supra* at 270. *See* Comment, *State v. Reader's Digest Association—A Knockout Punch to Unfair or Deceptive Acts or Practices in Washington?,* 10 Gonz. L. Rev. 529 (1975).

The next case to consider the per se doctrine was *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d

298, 553 P.2d 423 (1976), another action brought by the Attorney General under RCW 19.86.080. The court stated that

A violation of RCW 62A.9–504 [the UCC] is illegal and against public policy. Therefore, the failure to return profits from repossession sales constitutes a violation of RCW 19.86.020.

*State v. Ralph Williams, supra* at 324 n.19. According to the record, this practice had been engaged in by the Ralph Williams automobile dealership on "numerous occasions."

The most recent per se case is *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). There, in a private action brought under RCW 19.86.090, defendant was found to have breached its duty of good faith and fair dealing in refusing to pay plaintiffs' claim for insurance benefits. In finding for plaintiffs, the court stated:

[I]n this case we have a business which has been declared by the legislature to be one affected by the public interest, RCW 48.01.030. It is an industry extensively regulated and is supervised by an elected public official.

Thus, all the requisites of RCW 19.86 are met. The defendant is engaged in trade and commerce in a business legislatively declared to be affected by the public interest. It has committed acts which, by the special verdict, have been found to be unfair. Since we have concluded that post–sale activities are subject to the act, the plaintiffs are entitled to invoke the remedies of RCW 19.86.090.

*Salois,* at 361.

The Attorney General urges the court to adopt a broad rule that where a valid state statute has been violated in the conduct of trade or commerce, there has been a per se violation of RCW 19.86.020. With this violation, an action could be brought under RCW 19.86.080 by the Attorney General or under RCW 19.86.090 by a private citizen. Although not urged by the Attorney General, under the reasoning advanced presumably any violations of the law— statutory or common law—would be a per se violation of the public interest. *See* Comment, 10 Gonz. L. Rev., at 539.

■ The language in note 19 in *Ralph Williams,* although dicta, when combined with the per se test announced in *Reader's Digest* appears to give validity to the contention of the Attorney General. The position of the court was clarified, however, in *Anhold v. Daniels, supra.* In that case we defined the outer limits of the "public interest" requirement for a private action brought under RCW 19.86.090:

> Since *Lightfoot* [*v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976)], we have held the Consumer Protection Act applies and a private party may bring an action under it where there is a specific legislative declaration that the public has an interest in the subject matter of the action. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) (insurance). The other side of that coin has also been determined; *i.e.,* the act is not applicable and will not support a private action where there is a specific legislative declaration that the public does not have an interest in a particular subject matter. *Brown v. Charlton,* 90 Wn.2d 362, 583 P.2d 1188 (1978) (small scale water provider).
>
> Between the extremes of *Salois* and *Brown* are the myriad sets of facts upon which there is no direct legislation declaration.

*Anhold,* at 43.

The rule is this: unless there is a "specific legislative declaration" of a public interest, the public interest requirement of RCW 19.86.090 is not per se satisfied even though in engaging in an unfair or deceptive act or practice in the conduct of trade or commerce (RCW 19.86.020) the defendant violates a statute. Where the specific public interest has not been declared legislatively, it must be established by proving each of the three parts of the public interest test announced in *Anhold* and previously set forth in this opinion.

˙ ■ In the case before us there is no "specific legislative declaration that the public has an interest in the subject matter of the action." *Anhold,* at 43. The "[u]nderlying purposes and policies" of RCW Title 62A, the Uniform Commercial Code are:

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions.

RCW 62A.1–102(2)(a), (b), (c).

While RCW Title 62A may well involve public policy as noted in *Ralph Williams,* at no place in the UCC is there a legislative declaration of a specific public interest as is contemplated by *Anhold.* Violation of the UCC is not a per se showing of public interest sufficient to bring a private action under the Consumer Protection Act. As we pointed out earlier in this opinion, there was no inducement to plaintiff Haner to act or not to act. Recovery in an action brought under RCW 19.86.090 is not available in this case.

In summary, we hold (1) the award of damages to Haner from Columbia is affirmed; (2) the award of attorney fees to Olin is reversed; and (3) the judgment against Columbia and the granting of attorney fees under RCW 19.86 is reversed.

It is so ordered.

BRACHTENBACH, C.J., STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., and ARMSTRONG, J. Pro Tem., concur.