[No. 14225-9-I.   Division One.   May 28, 1986.]

EDWARD JOHNSEN, ET AL, *Plaintiffs*, v. HARLAN
PETERSEN, *as Guardian, Respondent,*
JEREMIAH M. McCORMICK,
*Appellant.*

*Jerry Alan Creim* and *Williams, Kastner & Gibbs,* for
appellant.

*James Edward Kennedy* and *Kennedy, Schuck, Harris & Miller,* for respondent.

SCHUMACHER, J.*—The trial court awarded the Estate of Kenneth Petersen the attorney's fees and costs it incurred as a result of unauthorized activities on the part of Jeremiah McCormick, an attorney. McCormick appeals.

On January 18, 1982, McCormick, as attorney for Kenneth Petersen, prepared a note for $10,000 payable to Edward and Betty Johnsen. The note was to be due upon either Kenneth's death or the sale of real property owned by him. Kenneth signed the note and delivered it to the Johnsens. Later the same year Kenneth was rendered incompetent in a traffic accident and his brother, Harlan Petersen, was appointed guardian of his estate.

In October 1982, Betty Johnsen telephoned McCormick and expressed concern about collecting on the note. McCormick commented on the difference between secured and unsecured notes, and Betty expressed an interest in having a "lien filed" to protect her note.

McCormick prepared a claim on behalf of Edward and Betty Johnsen against Kenneth's estate in the amount of $11,500, which included $10,000 for the note and $1,500 for rent of premises by Kenneth from the Johnsens. The claim was signed by McCormick as Johnsens' attorney and copies were filed, served on the attorney for Kenneth's estate, and mailed to the Johnsens.

After filing the claim, McCormick attempted to obtain payment but was not successful. The estate took the position that the note was not yet due. On April 20, 1983, McCormick wrote a letter to the estate's attorney, with a copy directed to the Johnsens, stating that "unless I receive

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

a favorable response from you before May 1, 1983, I will have no other recourse but to protect the claims by filing appropriate litigation".

Receiving no response, on May 2, 1983, McCormick prepared a summons and complaint, which he signed on behalf of the Johnsens. He informed the Johnsens by mail of his action. On May 3 the papers were served upon the guardian, Harlan Petersen, and on May 6 they were filed in court.

On May 5, 1983, the Johnsens contacted McCormick by telephone and a conversation took place between Edward Johnsen and the attorney. The Johnsens later testified that Edward instructed McCormick to drop the lawsuit. McCormick denied receiving such instructions.

On May 6, 1983, the Johnsens wrote a letter to the estate's attorney, James Kennedy, stating that they had not given McCormick authority to sue. A copy of the letter was not sent to McCormick. On May 11, 1983, Kennedy served McCormick with a motion to prove his authority to appear as an attorney for the Johnsens. Attached to the motion was an affidavit by Kennedy stating: "I have received communication, both by telephone and by mail, from Betty Johnsen and Ed Johnsen, stating that they did not give Jeremiah McCormick authority to bring this lawsuit." McCormick did not respond to the motion, but on May 25, 1983, served and filed a motion for default. On May 27, 1983, Kennedy filed his motion to prove attorney authority and the matter was noted for hearing on June 6, 1983. At the hearing on June 6, 1983, the court granted McCormick a continuance to take the depositions of the Johnsens, and on June 17 their depositions were taken.

McCormick filed a notice of withdrawal as the Johnsens' attorney on July 20, 1983, to be effective August 5, 1983. On August 19, 1983, the motion challenging McCormick's attorney authority came before the trial court. Judge Chan entered an order that McCormick was without authority to represent the Johnsens in the lawsuit against Kenneth Petersen's estate. On August 18, 1983, Kenneth's estate

filed a motion to recover the financial expense to the estate resulting from McCormick's unauthorized activities. When that motion came on for hearing on August 26, 1983, Judge Chan granted another continuance to enable McCormick to have the Johnsens' depositions transcribed and to submit a brief.

On September 28, 1983, the estate's motion for reimbursement of expense came before the court, and Judge Quinn ordered that the matter be set for a fact-finding hearing. The court also ordered McCormick to pay terms of $300 as a condition to granting his fourth request for a continuance. A trial was held on November 10, 1983, before Judge Chan.

Following the trial the court entered findings of fact and conclusions of law, holding that as of May 11, 1983, McCormick was on notice that his authority to continue further with the litigation was terminated. As to the expense incurred by the estate the court found that:

> The estate of Kenneth Petersen incurred costs for transcribing depositions and oral opinion in the amount of $213.25. The estate also incurred costs for attorneys fees after May 11, 1983, in the amount of $3,780.00. Said costs were reasonably incurred in resisting this lawsuit and in pursuing the question of the authority of Jeremiah McCormick after May 11, 1983. McCormick should get credit for $300.00 terms previously paid by him.

The trial court then entered judgment against McCormick for $3,783.25.

McCormick contends that the trial court erred in finding that he had been informed on May 5, 1983, by Edward to drop the lawsuit. McCormick argues that as an officer of the court his testimony should be given greater weight than the testimony of Edward Johnsen, who was intoxicated at the time of the May 5 telephone conversation.

■ Where the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings of the trial court. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 638 P.2d

1231 (1982). "As an appellate tribunal, we are not entitled to weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard." *In re Sego,* 82 Wn.2d 736, 739–40, 513 P.2d 831 (1973).

In addition to Edward Johnsen's testimony, the trial court also had the deposition of Betty Johnsen, who stated that she was present when her husband told McCormick over the phone to drop the lawsuit. We cannot reweigh the trial court's determination of the credibility of these witnesses. *Sego,* at 739–40. The trial court had substantial evidence from which to find that McCormick had been informed by Edward Johnsen on May 5 to drop the lawsuit.

McCormick argues that Edward had no right to control the lawsuit, because the claim for the unpaid note and rent was the separate property of Betty Johnsen. Therefore, McCormick alleges that only Betty Johnsen was his client. This argument fails because no proof of the separate property theory was submitted at trial.

Even assuming Betty Johnsen was McCormick's sole client, the affidavit he received from attorney James Kennedy on May 11, 1983, provided more than sufficient notice to McCormick that his authority to act further on behalf of the Johnsens was in serious doubt. *See Waterman v. Robertson,* 103 Wash. 553, 175 P. 177 (1918). The affidavit stated that Betty and Edward Johnsen had informed Kennedy orally and by letter that McCormick had not been authorized to start the lawsuit. After receiving this, the only course open to McCormick was to obtain the express authority of his clients before taking further action in the lawsuit. McCormick failed to do this. The trial court's decision that after May 11, 1983, McCormick acted without the authority of his clients is correct.

The principal issue argued by McCormick's counsel before this court was that the trial court erred in awarding a judgment against McCormick for the costs and attorney fees incurred by the guardianship in contesting the suit McCormick initiated. The court made its award pursuant

to RCW 2.44.020 and .030.[1]

RCW 2.44.020 provides:

> If it be alleged by a party for whom an attorney appears, that he does so without authority, the court may, at any stage of the proceedings, relieve the party for whom the attorney has assumed to appear from the consequences of his act; it may also summarily, upon motion, compel the attorney to repair the injury to either party consequent upon his assumption of authority.

RCW 2.44.030 provides:

> The court, or a judge, may, on motion of either party, and on showing reasonable grounds therefor, require the attorney for the adverse party, or for any one of several adverse parties, to produce or prove the authority under which he appears, and until he does so, may stay all proceedings by him on behalf of the party for whom he assumes to appear.

McCormick contends that the provisions of RCW 2.44-.020, under which the unauthorized attorney may be compelled to "repair the injury", are inapplicable to the present circumstances because it can be invoked only by the party "for whom the attorney appears" and not by the opposing party as in this case. In a similar vein, he maintains that RCW 2.44.030, which allows a motion by "either party", does not support the trial court's judgment because that section calls only for a stay of proceedings.

These arguments are not convincing. The two statutory sections are part of a single legislative act relating to the same subject matter, unauthorized litigation by an attorney, and must therefore be construed together. *In re Marriage of Little*, 96 Wn.2d 183, 634 P.2d 498 (1981). This court has no difficulty concluding that the legislative intent was that either the client or the opposing party can raise a challenge to an attorney's authority. The court may impose whatever sanction is appropriate to repair the injury,

---

[1] Although enacted in 1881, RCW 2.44.030 has never been cited in a Washington appellate decision. RCW 2.44.020 has been cited only in *Roberts v. Shelton S.W. R.R.*, 21 Wash. 427, 58 P. 576 (1899), a case having no precedential value to this appeal.

whether that be an award of damages, a stay of proceedings or otherwise.

Appellant argues that the statutory language, "repair the injury", should be limited to simply undoing whatever the attorney did without his client's authorization. Under this interpretation the trial court should only have ordered a dismissal of the lawsuit against the guardianship estate. Such an interpretation of the statutory phrase is too narrow. When an attorney starts or pursues litigation without authorization, an obvious and foreseeable injury to the opposing party is the cost of defense, for which the proper method of "repair" is the award of monetary judgment. This interpretation finds support in the case law holding that where the acts or omissions of a party have exposed one to litigation by a third party, the allowance of attorney fees may be a proper element of damages. *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 649 P.2d 828 (1982).

McCormick argues that even if this court finds attorney fees may be awarded under RCW 2.44.020 and .030, he should not be required to pay in this instance because he prevailed on the main issue at trial. The trial court found McCormick had implied authority to *start* the lawsuit. However, the trial was not restricted to the issue of McCormick's original authorization but correctly dealt with whether and when such authorization had been terminated. As most of the attorney fees and costs incurred by the estate resulted from McCormick's acts after his clients' authority had been terminated, he was not the prevailing party.

McCormick contends that the only unauthorized action taken by him was the filing of a motion for default, which was later abandoned. He alleges that the subsequent dispute and trial concerned only the matter of his authority and the award of legal expense to the estate, not any unauthorized action by him. Thus he argues he should not have to reimburse the estate for fees related to the subsequent dispute. We disagree.

All that occurred in this case after May 11, 1983, was the

direct result of McCormick's refusal to accede to the termination of his authority. After that date, McCormick continued to prosecute the action by filing a motion for default and noting it for hearing. Instead of simply complying with the clients' demand that the action be discontinued, McCormick prolonged the case for a period of months in a running battle over his authority, marked by McCormick's repeated requests for continuances and frequent hearings. As an experienced attorney, McCormick knew that such actions on his part would necessarily result in substantial legal expense to the estate. In summary, all that occurred herein after May 11, 1983, was the foreseeable consequence of McCormick's unauthorized actions as an attorney. As to the specific amount of the judgment, there was substantial evidence to support the trial court's determination.

For the aforementioned reasons, Petersen's estate is also entitled to the attorney fees it incurred on appeal.

The judgment is affirmed and respondent is awarded its costs and attorney fees of $2,337.74 on appeal.

COLE and UTTER, JJ. Pro Tem., concur.