IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JEFF MCNABB and ELAINE MCNABB, husband and wife, and the marital community composed thereof, | ) ) ) ) ) | No. 77832-3-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, an insurance company, | ) ) ) ) | UNPUBLISHED OPINION FILED: May 28, 2019 |
| Respondent. | ) ) ) | |

VERELLEN, J. — Jeff and Elaine McNabb sued their insurance provider, Metropolitan Property and Casualty Insurance Company, for breach of contract, bad faith, violation of the Consumer Protection Act (CPA)[1] and violation of the Insurance Fair Conduct Act (IFCA).[2] The jury returned a verdict in favor of the McNabbs and awarded over $8 million. But following trial, the court remitted the entire $1,345,317.24 CPA damages verdict, citing potential duplication concerns.

Washington courts strongly presume the jury verdict is correct. A jury's damages award must be within the range of substantial evidence in the record.

---

[1] Ch. 19.86 RCW.

[2] Ch. 48.30 RCW.

And although mathematical exactness is not required to calculate damages, the plaintiff must prove damages with reasonable certainty to avoid speculation.

Whether the result of speculation or duplication, on de novo review, the evidence before us does not support the total amount of economic damages awarded by the jury. But we arrive at a different number than the trial court on remittitur. Rather than remittitur of $1,345,317.29, we conclude $875,588.10 of economic damages is outside the range of the evidence in the limited record before us. Therefore, we reverse the trial court's order of remittitur and remand for entry of an amended judgment consistent with this opinion.

## FACTS

In 2014, the McNabbs lived in Seattle with their two daughters. The McNabbs' home was insured with Metropolitan. On June 12, 2014, the McNabbs' tankless hot water heater flooded the home with hot water.

After receiving Metropolitan's initial offer, the McNabbs objected and invoked the appraisal provision "[i]n accordance with the terms and provision of the insurance policy."[3] Under the appraisal provision, each party appointed an appraiser, and the appraisers appointed an umpire.

---

[3] Clerk's Papers (CP) at 2197; Report of Proceedings (RP) (July 17, 2017) at 72.

In November 2014, the McNabbs filed this lawsuit against Metropolitan for breach of contract, bad faith, violation of the CPA, and violation of the IFCA.[4]

On March 23, 2016, the appraisal panel issued an award. The appraisal award was divided into three categories: (1) dwelling, (2) contents, and (3) loss of use. In each category, the appraisal panel provided a claim valuation at date of loss and a separate claim valuation at date of appraisal. In the award for dwelling and content, the appraisal panel also provided a replacement cost value and an actual cash value.

After the three-week trial in July 2017, the jury returned a special verdict for the McNabbs of $8,371,323.93.[5] The award included $1,345,317.24 for CPA damages. The McNabbs moved to increase the verdict on various grounds. On September 22, 2017, the trial court granted the McNabbs' motion and entered an amended judgment for $10,590,169.48.[6]

Metropolitan moved for remittitur on several grounds and for a new trial. On November 20, 2017, the trial court denied Metropolitan's motion for a new trial and granted remittitur only as to the CPA damages verdict.[7] The court emphasized "the main question" regarding economic damages "is whether they are duplicate

---

[4] The McNabbs also sued (1) Allied Restoration, d/b/a Servpro of Central Seattle, (2) the appraiser, Tim Berglund, and (3) Taylor & Smith, LLC, d/b/a, PWC Construction. Metropolitan was the only defendant at trial. It appears the other defendants settled prior to trial. See CP at 94.

[5] CP at 739-43.

[6] CP at 2012-15.

[7] CP at 2379.

awards."[8] "[T]his Court cannot conclude that there is additional evidence of damages supporting [the CPA award of damages] at least that would not duplicate other awarded damages."[9] The court entered an amended judgment for $9,219,852.24.[10]

Metropolitan appealed on various issues, and the McNabbs cross appealed on remittitur. Metropolitan decided to pay the November 20, 2017 amended judgment, and on February 21, 2018, the parties moved for a stipulated dismissal of Metropolitan's appeal. This court granted the motion, and the McNabbs were redesignated as the appellants.

## ANALYSIS

### I. Remittitur

The McNabbs contend the trial court erred in granting remittitur of the jury's CPA damages verdict.

We review a trial court's decision granting remittitur de novo.[11]

Even in the context of de novo review, when reviewing a jury's award of damages, we "'strongly presume the jury's verdict is correct.'"[12] Under the Washington State Constitution article I, section 21, the right to a trial by jury is

---

[8] CP at 2385.

[9] CP at 2387.

[10] CP at 2414.

[11] Bunch v. King County Dep't of Youth Services, 155 Wn.2d 165, 176, 116 P.3d 381 (2005).

[12] Terrell v. Hamilton, 190 Wn. App. 489, 510, 358 P.3d 453 (2015) (quoting id. at 179).

"inviolate." "The jury is given the constitutional role to determine questions of fact, and the amount of damages is a question of fact."[13]

"'An appellate court will not disturb an award of damages made by a jury unless it is <u>outside the range of substantial evidence in the record</u>, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice.'"[14] When reviewing a trial court's ruling on a motion for remittitur, we view the evidence in the light most favorable to the nonmoving party.[15]

"Compensable injuries under the CPA are limited to 'injury to [the] plaintiff in his or her business or property.'"[16] The CPA does not allow a plaintiff to recover for personal injury, "'mental distress, embarrassment, and inconvenience,'" or the financial consequences of such injuries.[17] But the business and property injuries otherwise compensable are "relatively expansive."[18]

---

[13] <u>Bunch</u>, 155 Wn.2d at 179.

[14] <u>Id.</u> at 175 (emphasis added) (quoting <u>Bingaman v. Grays Harbor Cmty. Hosp.</u>, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985)).

[15] <u>Collins v. Clark County Fire Dist. No. 5</u>, 155 Wn. App. 48, 82, 231 P.3d 1211 (2010) (citing <u>id.</u> at 179).

[16] <u>Frias v. Asset Foreclosure Servs., Inc.</u>, 181 Wn.2d 412, 430, 334 P.3d 529 (2014) (alteration in original) (quoting <u>Hangman Ridge Training Stable, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

[17] <u>Id.</u> at 431 (quoting <u>Panag v. Farmers Ins. Co. of Wash.</u>, 166 Wn.2d 27, 57, 204 P.3d 885 (2009)).

[18] <u>Id.</u>

In general, although "[m]athematical exactness is not required,"[19] "'damages must be proved with reasonable certainty.'"[20] Reasonable certainty provides a "'reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'"[21]

The McNabbs argue the court erred in granting remittitur because substantial evidence supported the jury's CPA damages award. Metropolitan contends the jury's CPA damages award is duplicative of the jury's damages awards under other theories. Washington courts have repeatedly held duplicative damage awards are void against public policy.[22]

Here, the jury returned a verdict for the McNabbs and awarded $8,371,323.93. The special verdict included the following breakdown of damages on various legal theories:

---

[19] Dexheimer v. CDS, Inc., 104 Wn. App. 464, 476, 17 P.3d 641 (2001) (citing Erdman v. Lower Yakima Valley B.P.O.E. Lodge No. 2112, 41 Wn. App. 197, 208, 704 P.2d 150 (1985)).

[20] Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 715, 315 P.3d 1143 (2013) (quoting Lewis River Gold, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 717, 845 P.2d 987 (1993)).

[21] Gregg, 178 Wn. App. at 716 (quoting Clayton v. Wilson, 168 Wn.2d 57, 72, 227 P.3d 278 (2010)).

[22] See, e.g., Conrad ex rel. Conrad v. Alderwood Manor, 119 Wn. App. 275, 290, 78 P.3d 177 (2003) ("a double damage award is contrary to Washington law"); Eagle Point Condominium Owners Ass'n v. Coy, 102 Wn. App. 697, 702, 9 P.3d 898 (2000) ("It is a basic principle of damages, both tort and contract, that there shall be no double recovery for the same injury."); Barney v. Safeco Ins. Co. of America, 73 Wn. App. 426, 428, 869 P.2d 1093 (1994) ("Clearly, there is a 'public policy' against 'double' recovery."), overruled on other grounds by Price v. Farmers Ins. Co. of Wash., 133 Wn.2d 490, 946 P.2d 388 (1997); Wilson v. Brand S Corp., 27 Wn. App. 743, 747, 621 P.2d 748 (1980) ("double recovery . . . is contrary to the principle of compensatory damages").

Breach of contract

|  |  |
|---|---|
| Repair to the home: | $ 1,127,042.98 |
| Repair or replace personal property: | $ 591,676.61 |
| Loss of use: | $ 241,223.26 |
| Additional damages: | $ 474,233.84 |

Breach of duty of good faith

|  |  |
|---|---|
| Economic damages: | $ 475,000.00 |
| Noneconomic damages Jeff: | $ 1.8 million |
| Noneconomic damages Elaine: | $ 1.84 million |
| Consumer Protection Act: | $ 1,345,317.24 |
| Insurance Fair Conduct Act: | $ 476,830.00[23] |

To support their argument, the McNabbs compare the total economic damages awarded by the jury with the total evidence of economic damages presented at trial. Metropolitan argues this approach is illogical and ignores the court's instruction concerning CPA damages.

In jury instruction 22, the court instructed the jury on damages across the various theories. With regard to the CPA, the court instructed:

> If your verdict is for the Plaintiffs on their Consumer Protection Act claim, you may award actual damages proximately caused by the violation of the CPA, you shall determine the amount of money that will reasonably and fairly compensate the Plaintiffs for the injuries to their property proximately caused by the unfair or deceptive acts of Metropolitan. Injuries to property, if any, include: <u>financial loss, difficulty in securing a loan or other credit, time away from work, loss of use of their personal property, and similar actual</u>

---

[23] CP at 2390-92.

damages. You may not award damages on the CPA claim for noneconomic damages such as emotional distress.[24]

Metropolitan argues "many of the damages allowed for the other claims were not included in the four elements of damages listed in the CPA damages instruction."[25] But the term "financial loss" is not narrowly limited by the subsequent categories of damages, as suggested by Metropolitan at oral argument. Jury instruction 22 is broad enough to cover all of the categories of economic loss in dispute.

The McNabbs contend the total economic damages award is within the range of the evidence of economic damages proven at trial. We disagree. Whether the result of speculation or duplication, under de novo review, the evidence before us does not support the total amount of economic damages awarded by the jury. But we arrive at a different number than the trial court on remittitur.

The total economic damages awarded by the jury, across the four theories, exceeds $4.7 million:

| Breach of contract—Repair to the home | $ 1,127,042.98 |
| Breach of contract—Repair or replace personal property | $ 591,676.61 |
| Breach of contract—Loss of use | $ 241,223.26 |
| Breach of contract—Additional damages | $ 474,233.84 |
| Breach of duty of good faith—Economic damages | $ 475,000.00 |
| Consumer Protection Act | $ 1,345,317.24 |
| Insurance Fair Conduct Act | $ 476,830.00 |
| Total Economic Damages Awarded by the Jury | $4,731,323.93 |

---

[24] CP at 681 (emphasis added).

[25] Resp't's Br. at 14.

The appraisal award, as of the date of appraisal, for contents, dwelling, and loss of use, totals $1,959,942.85. It is undisputed the jury awarded the same amount under breach of contract for repair to the home, to repair or replace personal property, and for loss of use. This portion of the jury award is within the range of the evidence.

Outside of the appraisal award, the McNabbs identify three main categories of economic damages evidence: increased construction costs, loss of use, and costs associated with the appraisal process. The McNabbs also argue they presented substantial evidence of increased damages associated with their personal property, beyond the amount awarded by the jury, and various miscellaneous damages items.

A major disputed component of economic damages is the amount attributed to increased construction costs. The McNabbs relied on testimony from their construction expert, Wes Snowden, to contend construction costs increased between 8 to 12 percent per quarter.

a. *Increased Construction Costs*

On direct examination, the McNabbs' counsel asked Snowden, "[W]ould you be able to build—rebuild the McNabbs' house today with the amount of money that was in your [2016] bid?"[26] Snowden replied, "No, we wouldn't hold the estimate right now."[27] The McNabbs' counsel asked, "Do you have an opinion as

---

[26] RP (July 19, 2017) at 348.

[27] Id.

to how much the material and labor costs have gone up from then?"[28]  Snowden answered:

> Yeah, we've been asked this before because, you know, because generally we only hold bids for 60 days.  So 60 days—yes, the answer to the question is right now that if we're asked to hold something and if it's more than about three months or so, our opinion is that the estimate can go up anywhere from 8 to 12 percent.[29]

In November 2015, the estimated cost of reconstruction was close to $1 million.[30]  Four months later, in March 2016, the appraisal panel awarded over $1.2 million to repair the McNabbs' home.[31]  In response to Metropolitan's remittitur motion, the McNabbs argued construction costs were increasing by 10 percent per quarter from the date of the appraisal award through trial and a subsequent 12-month reconstruction period.[32]

Metropolitan questions whether Snowden's testimony supports an ongoing percentage increase of 10 percent per quarter.  But viewed in the light most favorable to the McNabbs, Snowden's testimony does support continuing inflation.

There is no specific evidence in the record before us supporting a 12-month projection for reconstruction.  The appraisal award for loss of use refers in passing to a three-month period for reconstruction.[33]  But the McNabbs presented

---

[28] Id.

[29] Id.

[30] Ex. 332.

[31] CP at 2197.

[32] CP at 2313.

[33] CP at 2204 ("3 months reconstruction").

10

substantial evidence concerning the scope of reconstruction. The November 2015 estimate illustrates the lengthy list of items to be completed during reconstruction.[34] And there was evidence that reconstruction would cost upwards of $1 million. This was not a small project.

As a result, we conclude it is within the range of the evidence for the jury to allow more than three months for reconstruction. Considering all the evidence before us, a projected 12 months for reconstruction, as argued by the McNabbs in response to Metropolitan's motion for remittitur, is within the range of evidence.

From the date of appraisal in March 2016 through reconstruction in July 2018 is 28 months; 28 months is 9.3 quarters. Given the original estimate and an average 10 percent increase in construction costs per quarter for 9.3 quarters, increased construction costs would total $930,000. We conclude $930,000 for increased construction costs is within the range of the evidence.

### b. Loss of Use

Another major category of debated economic damages is loss of use. The appraisal award for loss of use covered December 2014 through April 2016.[35] The award for loss of use also included costs associated with a projected three-month reconstruction.[36] The appraisal panel's loss of use award was based on the actual rental costs incurred by the McNabbs. The McNabbs paid $9,130 a month for the

---

[34] Ex. 332.

[35] CP at 2204. The loss occurred in June 2014 and the McNabbs moved into the rental house in December 2014.

[36] Id.

rental house and $2,500 a month for furniture, for a total monthly cost of $11,630.[37] The jury awarded the McNabbs $241,223.26 for loss of use under their breach of contract claim, exactly the amount the appraisal panel awarded for loss of use on the claim summary page of the appraisal award.[38]

The McNabbs contend the range of evidence of total economic damages includes a higher monthly amount for a longer period beyond the "Breach of Contract—Loss of Use" section of the special verdict. The McNabbs cite to the insurance contract and argue they are entitled to the "fair rental value" of their home during the period of time their home was not fit to live in. As to the time period, the record contains evidence of significant damages to their home from the date of loss. As to the amount, the McNabb's relocation expert, Paul Nickels, testified the fair rental value of the McNabbs home was $15,000 a month.[39] June 2014, when the loss occurred, through July 2018, when the McNabbs' projected the reconstruction to be completed, is 50 months. $15,000 a month for 50 months is $750,000. $750,000 less the jury's award for loss of use, $241,223.26, to avoid duplication, is $508,776.74. We conclude an additional $508,776.74 for loss of use is within the range of the evidence.

c. Costs Associated with Appraisal

There are numerous economic costs associated with the year and half long appraisal process. The motion for remittitur referred to an itemized list of damages

---

[37] Id.

[38] CP at 2390, 2204.

[39] RP (July 18, 2017) at 321.

alleged by the McNabbs as the "Appraisal Associated Costs as of July 2017."[40] We analyze whether the substantive evidence matches or deviates from the itemized list.

The larger items include: (1) $269,765.73 for the cost of the McNabbs' appraiser, Roger Howson with ICDR, Inc.,[41] (2) $4,797.50 for appraisal services through Frank Riordan with ARCH Consulting Group, LLC,[42] (3) $93,016.67 for appraisal services through MDE, Inc. and Engineering Systems, Inc.,[43] (4) $35,511.23 for appraisal services through Charter Construction, Inc.,[44] (5) $2,737.01 for appraisal services through Belfor Property Restoration,[45] (6) $14,497.44 for cabinet storage through QA Group,[46] (7) $3,950 for relocation services through NW Relocation Solutions, LLC,[47] (8) $657.60 for cabinet storage through QA Group,[48] and (9) $18,998.06 for cabinet refinishing through QA

---

[40] Exhibit 392 is an illustrative exhibit. In the motion for remittitur, the McNabbs relied on Exhibit 392. See RP (Oct. 27, 2017) at 649-50.

[41] Ex. 73-75.

[42] Ex. 67 and 68.

[43] Ex. 22-39, 41, and 43. Exhibit 40 is also an invoice from MDE, Inc. but it is a duplicate of Exhibit 37. Exhibits 41 and 43 are invoices from Engineering Solutions, Inc., but it appears these invoices were included in the figure for MDE, Inc.

[44] Ex. 271.

[45] Exs. 70, 71.

[46] Ex. 273.

[47] Ex. 264.

[48] Ex. 389.

Group.[49] With regard to these items, the evidence is consistent with the amounts claimed by McNabbs. These items total $443,931.24.

Additionally, the invoices for the McNabbs' portion of the appraisal panel umpire, retired Judge Steve Scott, with Judicial Dispute Resolution, LLC, total $13,085.[50]

The invoices for services performed by Dibble Engineers, Inc. total $3,382.25.[51] But the same amount, for services performed by Dibble, is included in the invoice for appraisal services through Charter Construction.[52] It would be duplicative to count this amount twice.

To the extent the McNabbs rely on (1) $2,275.00 for "Schuster-Contract Services," (2) $3,573.33 for "Moving expenses," (3) $1,430.98 for "Storage Fees-April, May 2017," and (4) $9,529.34 for "Service Master Off-Site Storage for 3/1/16-7/1/17,"[53] the McNabbs do not provide, and we cannot find any support for these services or amounts in the record before us.

In total, we have located invoices and testimony supporting costs associated with the appraisal process in the amount of $457,016.24. We conclude $457,016.24 for costs associated with the appraisal process is within the range of the evidence.

---

[49] Ex. 388.
[50] Ex. 55-66.
[51] Ex. 69.
[52] Ex. 271.
[53] Ex. 392.

14

### d. Contents of the Home—Replacement Value

The McNabbs also suggest they were entitled to a larger amount for the contents of their home than the amount awarded by the jury. In the special verdict for breach of contract, "[t]o repair or replace the McNabbs' personal property," the jury awarded $591,676.61, the actual cash value of the McNabbs' personal property at the date of appraisal.[54]

The jury's award comes from the appraisal award.[55] The appraisal award included the actual cash value and the replacement cost value of the McNabbs' personal property. The award also included a valuation at the date of loss and a valuation at the date of appraisal.

In unchallenged jury instruction 8, the court instructed the jury:

You must accept certain values listed in [the appraisal award] as the measure of damages as explained below. . . .

. . . There are three different Awards in Ex. No. 90: "Appraisal Award-Dwelling," "Appraisal Award-Contents" and "Appraisal Award-Loss of Use."

Each of these Awards has a Claim valuation at Date of Loss and a Claim Valuation at Date of Appraisal. This Court has already ordered that the value that shall be used is the "Claim Valuation at the Date of Appraisal" for each of the three Awards.

In considering the page entitled "Appraisal Award-Contents" you shall accept the Actual Cash Value unless the Plaintiffs can establish their right to the Replacement Cost Value for any particular contents under the insurance policy, and you shall determine what, if any, of those damages Plaintiffs have established were caused by the water loss on June 12, 2014.[56]

---

[54] CP at 2390.

[55] CP at 2199.

[56] CP at 662-63 (emphasis added).

The replacement cost value of the McNabbs' personal property at the date of appraisal was $933,853.60.[57] The McNabbs contend the range of evidence extends to the difference between the jury's award of the actual cash value and the replacement cost value, $342,176.99. But the McNabbs have not provided any citations to the record or compelling argument to establish their right to the replacement cash value for any specific items.

e. *Miscellaneous Items*

Finally, the McNabbs provide a list of miscellaneous items that they argue support the jury's total economic damages award:

> The McNabbs paid for [laundry room] work themselves, and this was not included in the appraisal. They hired experts to inspect the roof . . . . Other items of damage in evidence was other construction work the McNabbs undertook, engineering services, relocation assistance, Elaine's lost work during the time sh[e] could not work from home, funds to repair internet connection so Elaine could resume work, storage, additional unreimbursed living expenses incurred because they could not use their home during June to December 2014.[58]

Several of the listed items duplicate costs associated with the appraisal process, including engineering services, relocation assistance, and storage. These items are addressed above. And the living expenses incurred between June and December 2014 are included in the loss of use section above.

The remaining items are not within the range of the evidence. Although mathematical exactness is not required, the plaintiff must establish damages with reasonable certainty. The complete lack of support for the remaining items would

---

[57] CP at 2203.

[58] Appellant's Br. at 27-28 (citations omitted).

require the jury to speculate to determine an award of economic damages as to these items.

For example, the McNabbs contend they both spent considerable time away from work, consulting with experts, monitoring Metropolitan's adjuster and contractors, and performing work around the house. Jeff McNabb testified, "I'm a small business owner. My company is called Autoscan, and we do design and drafting for engineers and architects."[59] Elaine McNabb testified, "I own my own business. I manufacture children's craft kits and sell them online."[60] But the record does not provide any basis for the jury to determine the amount of time either Jeff or Elaine spent away from work or the value of either Jeff or Elaine's time. The McNabbs argue the jury could reasonably estimate the amount of such an award. We disagree. If the jury's total economic damages award included damages for the McNabbs' time away from work, such an award would necessarily be the result of speculation.

None of the miscellaneous damage items are within the range of the evidence.

*f. Other*

The McNabbs also suggest the jury could have awarded economic damages because they could not switch insurance providers. There is no evidence in the record before us concerning a projection of the savings the

---

[59] RP (July 17, 2017) at 9.
[60] RP (July 24, 2017) at 546.

McNabbs would have realized through another insurer. Although precision is not required, on this record, such an award would necessarily be the result of speculation.

We also note that any suggestion by the McNabbs in opposition to the motion for remittitur concerning the lost value of their home is not compelling. The McNabbs cannot recover for both the lost value of their home and the costs of repair. Because the jury awarded damages to repair the home, an award for the lost value of their home would be duplicative.

### g. Totals

In conclusion, our de novo review of the evidence on remittitur reveals that the economic damages within the range of the evidence consists of:

| | |
|---|---|
| Appraisal award | $1,959,942.85 |
| Increased construction costs | $  930,000 |
| Loss of use (beyond the jury's award) | $  508,776.74 |
| Costs associated with appraisal | $  457,016.24 |
| Total Evidence of Economic Damages | $3,855,735.83 |

Comparing the total economic damages award, $4,731,323.93, and the total evidence of economic damages, $3,855,735.83, we conclude $875,588.10 is outside the range of the evidence presented at trial. We reverse the trial court's order of remittitur and remand for entry of an amended judgment consistent with this opinion.

## II. Adequacy of the Record for Review

Metropolitan argues we should dismiss the appeal because the McNabbs have failed to present an adequate record.

18

"The party presenting an issue for review has the burden of providing an adequate record to establish such error."[61] This includes "those portions of the verbatim report of proceedings necessary to present the issues raised on review."[62]

Although we do not have the entire verbatim report of proceedings, Metropolitan does not establish the complete trial transcript is necessary to resolve remittitur in this setting. We have been able to address whether the partial record supports the McNabbs' claimed economic damages. We decline to dismiss the McNabbs' appeal.

### III. Fees on Appeal

The McNabbs seek fees on appeal under RCW 19.86.090 and RAP 18.1(a).

The CPA provides "Any person who is injured in his or her business or property . . . may bring a civil action in superior court to enjoy further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee."[63] The statute extends to fees incurred on appeal.[64]

---

[61] State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (citing State v. Wade, 138 Wn.2d 460, 464, 979 P.2d 850 (1999); RAP 9.2(b)).

[62] RAP 9.2(b).

[63] RCW 19.86.090 (emphasis added).

[64] Robinson v. McReynolds, 52 Wn. App. 635, 641, 762 P.2d 1166 (1988); Wilkinson v Smith, 31 Wn. App. 1, 15, 639 P.2d 768 (1982).

Generally, when a contract or statute authorizes attorney fees to a prevailing party, "[i]f neither party wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties."[65] This appeal is limited solely to the order on remittitur. Because we uphold a sizeable portion of the remittitur, we conclude the McNabbs are not the substantially prevailing party on appeal. We exercise our discretion and decline to award fees.

WE CONCUR:

Andrus, J.

---

[65] Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 612 (1997).