[Nos. 3622–7–III; 3652–9–III;    Division Three.    December 4, 1980.]
3641–3–III.

ROBERT MASSINGALE, *Respondent,* v. NORTHWEST CORTEZ, INC., *Respondent,* GENERAL MOTORS CORPORATION, *Appellant.*

ROBERT MASSINGALE, *Respondent,* v. NORTHWEST CORTEZ, INC., *Appellant,* SPORTSCOACH CORPORATION OF AMERICA, ET AL, *Respondents.*

ROBERT MASSINGALE, *Respondent,* v. NORTHWEST CORTEZ, INC., ET AL, *Respondents,* SPORTSCOACH CORPORATION OF AMERICA, *Appellant.*

*Orville B. Olson, David R. Hevel, Olson, Olson & Hevel, Frank W. Payne,* and *Payne & Verzani,* for appellants.

*Eugene G. Schuster, Critchlow & Williams, John G. Schultz,* and *Leavy, Taber,* for respondents.

Roe, J.—Robert Massingale purchased a new 31–foot 1977 Sportscoach motor home from Northwest Cortez, Inc. (NW) on October 30, 1976. The purchase price plus interest was $54,000. Massingale signed an installment contract which NW assigned to Seattle–First National Bank. NW had purchased the coach from Sportscoach of America (SCA) which built the coach on a chassis supplied by Chevrolet Division of General Motors (GM). SCA paid $4,000 for this chassis. SCA rebuilt part of the electrical system on the chassis while constructing the coach. NW

gave Massingale a GM limited warranty on the chassis, and both NW and SCA excluded all warranties on the chassis.

Massingale took delivery of the coach, and noticed immediately that it would not start when the engine was hot. He returned the coach numerous times to NW and took it to various Chevrolet dealers. Starters, solenoids, and batteries were replaced to no avail. After many months of attempting to cure the problem, NW finally diagnosed it and designed a cure. The problem was high ambient temperatures under the hood which decreased the capability of the wiring to carry the voltage needed to start the engine. The cure was a $3 magnetic switch and $8 for labor. This repair was made on August 8, 1977, but the coach again refused to start. The cause this time was not the ignition system, but apparently the battery had sulfated from lack of use.

SCA's expert witness testified the hot start problem was the result of an engineering defect by General Motors. During the time in which plaintiff was having trouble with the hot start problem on his coach, GM knew of the problem which occurred in a small fraction of its chassis but did not know how to correct it. At this same time, SCA, which assembled and modified the chassis into the finished product, also knew of the problem, but knew how to correct it. Other dealers had used SCA's remedy successfully, but SCA had not told NW of the cure because it considered the problem GM's, and because NW had never asked. GM sent the plaintiff to various of its dealers and many unsuccessful attempts were made to cure the deficiency.

Still unable to use his coach with confidence, nearly 1 year later, on August 29, 1977, Massingale revoked his acceptance. He sued NW, SCA, and GM, alleging breach of warranties, damages, and consumer protection violations, and sought damages, attorney's fees and costs. Seattle–First National Bank intervened. The court ordered rescission of the sales contract; judgment for plaintiff against NW for restitution, attorney's fees and costs plus interest; judgment against Seattle–First National Bank for the amount paid

under the contract; judgment against SCA and GM for incidental costs and attorney's fees. Seattle–First National Bank, SCA, and NW were all adjudged entitled to indemnity against General Motors for all costs and fees. Final judgment against General Motors was for more than $73,000, arising out of a GM sale of only $4,000. Massingale was given a lien against the coach until the judgment is satisfied.

On appeal, NW claims that even though it is entitled to indemnity, it did not breach any warranties, and rescission should not have been allowed.

■ When a merchant sells goods, they must be "fit for the ordinary purposes for which such goods are used". RCW 62A.2–314(2)(c). When this warranty attaches to a new car, the seller warrants that the car is fit to transport the driver and passengers reasonably safely, efficiently and comfortably. *Berg v. Stromme,* 79 Wn.2d 184, 196, 484 P.2d 380 (1971). *See Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 44, 554 P.2d 349, 83 A.L.R.3d 680 (1976); U.C.C. § 2–314, Official Comment 8 (1976).

■■ The court concluded there was a substantial defect in the coach which impaired its value and use and rendered it unsafe. This conclusion of law is a finding of fact and will be so treated. *Hays Merchandise, Inc. v. Dewey,* 78 Wn.2d 343, 346–47, 474 P.2d 270 (1970); *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963). There is substantial evidence in the record to support this finding, and it will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

■ For the same reason, rescission (revocation of acceptance under RCW 62A.2–608) is the proper remedy in this case. A buyer may revoke his acceptance of goods when the goods' nonconformity substantially impairs their value to him. A trial court is required to find substantial impairment (an objective test) caused by the nonconformity. *Hays Merchandise, Inc. v. Dewey, supra.* The trial court did make such a finding; it is supported by substantial evidence

and will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc., supra.*

NW next argues it was a mere conduit and not in pari delicto with GM or SCA, and is therefore entitled to indemnification from either GM or SCA. SCA similarly argues it was only a passive wrongdoer and its knowledge of the defect does not bar indemnification. GM argues SCA's failure to correct a known defect precludes indemnity by SCA. GM counters NW's arguments by claiming that either (1) NW successfully repaired the coach in which case acceptance was improperly revoked, or (2) NW did not repair the coach after it learned of the right repair. If there were no repair, GM argues, this shows a lack of ordinary care and indemnity would be inappropriate.

NW, as a retailer, is a mere conduit and does not have a primary duty to test a product for safety. That duty rests with the manufacturer. *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 199–201, 491 P.2d 1346 (1971). If the retailer incurs liability as a result of the manufacturer's negligence and not as a result of his own, the retailer is entitled to indemnity from the manufacturer. *Dobias v. Western Farmers Ass'n, supra.* In *Schroeder v. Fageol Motors, Inc.,* 86 Wn.2d 256, 544 P.2d 20 (1975), both the manufacturer and the seller of a truck made independent express warranties to the buyer. The truck did not work properly and could not be properly repaired, even though both the manufacturer and seller repeatedly attempted repairs. The buyer sued Fageol and the manufacturer, and Fageol claimed it was entitled to indemnification from the manufacturer. The Supreme Court stated:

> This is not a situation in which the plaintiff seeks to recover for the breach of an implied warranty of merchantability resulting from a defectively produced product, in which case the retailer acts merely as a conduit. Rather, Fageol made an express warranty under which it promised to make all repairs necessary. This warranty was independent from any agreement entered into between the plaintiff and [the manufacturer]. . . . Therefore, in the absence of a separate contract for

indemnification between Fageol and [the manufacturer], there is no basis for imposing the entire burden of liability on the manufacturer, . . .

*Schroeder v. Fageol Motors, Inc., supra* at 263.

NW made no express warranties on the chassis, but is held to an implied warranty of merchantability. Therefore, NW, a mere conduit in the chain of distribution, should be allowed indemnification from SCA or GM. *See Koch v. Seattle,* 9 Wn. App. 580, 513 P.2d 573 (1973).

The trial court concluded GM was actively negligent, apparently because the chassis was improperly designed. The evidence shows GM was aware of the problem which occurred in a small fraction of the chassis. GM was unaware of the method to correct the problem. SCA was aware of the defect and how to correct it, but failed to notify its dealers or Sportscoach purchasers of the defect and cure unless specifically asked to do so. Further, SCA modified the electrical system and could have installed the switch at any time.

SCA owed a duty to the ultimate consumer as well as did GM and, if it had fulfilled that duty, the loss in this lawsuit would never have occurred. Thus, the active negligence of SCA is a contributing factor.

The active negligence of one party prevents his obtaining indemnity from another party also actively negligent. *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955). Active negligence is not limited to positive conduct, but

> may be found in nonaction coupled with knowledge of a defective condition, for in such a case, "justice precludes recovery over—and this is true, whether we rely upon the doctrine that actual knowledge plus inaction equals active negligence, or upon the philosophy of natural justice and equal culpability, or upon the mandates of public policy."

3A L. Frumer & M. Friedman, *Products Liability* § 44.04, at p. 15–56 to 15–59 (1980), quoting *Falk v. Crystal Hall, Inc.,* 200 Misc. 979, 105 N.Y.S.2d 66 (1951), *aff'd,* 279 App.

Div. 1071, 113 N.Y.S.2d 277 (1952), *appeal denied,* 304 N.Y. 987 (1953). *See also Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 783, 440 P.2d 453 (1968).

Since both GM and SCA were actively negligent, both are joint tort–feasors, and neither is entitled to indemnification from the other. The trial court allowed attorney's fees to Massingale. That part is affirmed. The allowance of attorney's fees to SCA from GM is reversed. NW is allowed its attorney's fees as provided in the judgment. The trial court will determine reasonable attorney's fees as granted under the Magnuson–Moss warranty act, 15 U.S.C. § 2310(d)(2).

Affirmed in part and reversed in part for proceedings consistent with this opinion.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied January 7, 1981.

Review denied by Supreme Court February 27, 1981.