[No. 6767–6–II. Division Two. April 17, 1985.]

DAVID BLAKE, ET AL, *Respondents*, v. FEDERAL WAY
CYCLE CENTER, ET AL, *Appellants*.

*William R. Levinson,* for appellants.

*Robert L. Rovai,* for respondents.

REED, J.—Federal Way Cycle Center (FWCC), a motorcycle dealer, and Yamaha Motor Corporation, U.S.A. (Yamaha), a motorcycle manufacturer, both appeal from a judgment ordering rescission of the sale of a motorcycle and awarding damages under the Consumer Protection Act, chapter 19.86, Revised Code of Washington. They contend on appeal that (1) there is insufficient evidence to support the trial court's finding that the motorcycle had a defect which defendants were not able to cure, and (2) the court erred in concluding that FWCC and Yamaha violated the Consumer Protection Act by their post–sale dealings with the plaintiff. We affirm the trial court's order of rescission, but reverse the award of damages under the Consumer Protection Act.

In April 1981, Blake purchased a new 1981 model Yamaha motorcycle, designated the XV750 Virago, from FWCC

for a cash price of $3,391.02, including tax and license. Immediately after taking possession, Blake discovered an oil leak in the engine and took the cycle back to FWCC for repair. While repairing the oil leak, the FWCC mechanic apparently mistimed the engine's camshaft. The XV750 Virago was a brand new model, completely different from any previous Yamaha models, and could be incorrectly timed and still appear to be correctly timed. Because of the mistimed engine, Blake was not satisfied with FWCC's repair of the cycle. FWCC again checked the motorcycle's timing and told Blake that it could find nothing wrong and that it ran properly. When Blake continued to complain of poor performance, FWCC suggested that he take the machine to another dealer, Tacoma Yamaha.

On June 6, 1981, Blake took the cycle to Tacoma Yamaha, where repairs were effected; Blake still was not satisfied. On that same date, Blake wrote a letter to Yamaha and advised them of his problem. On June 23, 1981, Blake's attorney wrote a letter to both FWCC and Yamaha to inform them that Blake revoked his acceptance of the cycle and demanded rescission of the contract.

In the interim, FWCC discovered that the cycle probably had been mistimed during repair of the oil leak. FWCC informed Yamaha to this effect but did not contact Blake. On July 10, the same day Blake commenced suit, Yamaha contacted him, explained the timing problem to him and requested that he again take the cycle to Tacoma Yamaha and allow them to attempt to repair the timing problem. Soon thereafter Yamaha issued a factory bulletin to all of its dealers detailing the timing problem with the new model XV750 Virago.

After Tacoma Yamaha's second attempted repair of his cycle, and 10 days of test driving, Blake was still dissatisfied with the cycle's performance. Consequently he parked it in his garage and since has not operated it. In August 1981, Blake sent additional letters to both defendants demanding rescission.

In November 1981, a settlement was reached whereby the

defendants agreed to exchange a new cycle for Blake's cycle. The new cycle was to be delivered to Blake by January 1, 1982. The settlement agreement never was reduced to writing. Believing the dispute had been settled, Blake struck his December trial date.

January 1, 1982 came and went and Blake had not received the new cycle. On January 12, 1982, Blake's attorney wrote to the attorney for FWCC and Yamaha and informed him that unless Blake received the new cycle by January 20, 1982, litigation would be reinstated. Through oversight, FWCC and Yamaha failed to inform their attorney that the substitute cycle had been made available for exchange at FWCC sometime in December 1981. Consequently, Blake was not informed of the new cycle's availability until February 11, 1982. This, being beyond the January 20 deadline, was too late for Blake.

Blake renoted the case for trial and obtained a trial date in June 1982. The attorney for FWCC and Yamaha sought a continuance of the June trial date. Blake's attorney objected to a continuance, claiming that the defendants were taking an unfair advantage of the money Blake had paid for the cycle. The trial court granted the continuance upon the condition that Yamaha place the purchase price of the cycle ($3,391.02) into a joint account with Blake to yield a minimum 12 percent interest. At the time of trial, claiming that such an account was unavailable, Yamaha disclosed it had failed to meet this condition.

After a trial to the court, the judge found that the motorcycle was not as warranted and granted rescission. The court also concluded that defendants' post–sale dealings with Blake were in violation of the Consumer Protection Act and awarded damages. Defendants appeal.

██ We first consider defendants' contention that the evidence was insufficient evidence to support the court's finding that the cycle had a defect which had not been cured, thereby entitling Blake to revoke his acceptance of

the cycle and rescind the purchase.[1] A transaction involving the sale of goods is governed by the Uniform Commercial Code. RCW 62A.2–102. A buyer may revoke his acceptance of goods whose nonconformity substantially impairs its value to him, if he has accepted it on the reasonable assumption that its nonconformity would be cured and in fact a seasonable cure has not been effected. RCW 62A.2–608(1)(a). Whether or not the nonconformity causes a substantial impairment is a factual issue to be determined under an "objective" test, with emphasis upon "substantially impairs . . . value" rather than upon ". . . impairs its value to him." *Hays Merchandise, Inc. v. Dewey,* 78 Wn.2d 343, 347, 474 P.2d 270 (1970); *Massingale v. Northwest Cortez, Inc.,* 27 Wn. App. 749, 752, 620 P.2d 1009 (1980). Here, the trial court concluded there was a defect (timing) in the cycle that FWCC attempted without success to cure. Although denominated a conclusion of law, this is a finding of fact and will be treated as such. *Hays Merchandise, Inc. v. Dewey,* 78 Wn.2d at 346–47; *Massingale,* 27 Wn. App. at 752. If there is substantial evidence in the record to support this finding, it will not be disturbed on appeal. *Massingale,* 27 Wn. App. at 752.

FWCC and Yamaha contend that Tacoma Yamaha satisfactorily repaired (cured) the cycle's timing problem within a reasonable period of time; further, that Blake presented no "objective" evidence that the value of the cycle was substantially impaired after the work was done by Tacoma Yamaha. Defendants argue that Blake's complaints were all "subjective," *i.e.,* expressed only some unarticulated desire or personal unhappiness. We disagree. Blake testified more than once that the cycle, after the final work by Tacoma Yamaha, did not perform at 100 percent or as it did when he first purchased it. He also testified to an overall increase

---

[1] We disagree with Blake's contention that defendants failed to raise this issue at the trial level, thus precluding review. Although the thrust of the defendants' defense was that a settlement agreement had been made and then breached by Blake, it appears from the amended answer that the defendants denied that the cycle was defective.

in the cycle's vibration and a loss of high r.p.m.'s. We disagree also with the defendants' contention that, in order to meet the "objective" test, Blake was required to present some sort of expert testimony. In this regard, we note that defendants did not present any evidence, expert or otherwise, either to contradict Blake's evidence or to prove that the cycle was not defective. Finding substantial evidence in the record to support the court's findings, we uphold its order granting rescission.

We next address the issue whether the court erred in concluding that FWCC and Yamaha violated the Consumer Protection Act by their post–sale dealings with the plaintiff. The post–sale acts found by the court to be unfair were (1) FWCC's failure immediately to advise Blake that it had discovered the unusual timing problem; (2) defendants' breach of the settlement agreement to provide Blake with a new cycle in exchange for the defective cycle; and (3) defendants' failure to deposit the purchase price of the cycle into a joint account with Blake as a condition to receiving a continuance. Defendants contend that the evidence does not prove either a per se violation of the Consumer Protection Act or the commission of any unfair or deceptive acts unregulated by statute but involving the public interest. We agree.

The Consumer Protection Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." RCW 19.86.020. The act's prohibitions are, however, limited to those practices which are not "reasonable in relation to the development and preservation of business" or are "injurious to the public interest." RCW 19.86.920. For a private individual to initiate an action under the Consumer Protection Act, RCW 19.86, "'the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest.'" *McRae v. Bolstad,* 101 Wn.2d 161, 165, 676 P.2d 496 (1984), quoting *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). Each of the above elements must be

established to satisfy the requirements of the act. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 681 P.2d 242 (1984). A consumer protection act claim may be based on a per se violation of a statute or on unfair or deceptive practices unregulated by statute but involving the public interest. *Lidstrand v. Silvercrest Indus.,* 28 Wn. App. 359, 366–67, 623 P.2d 710 (1981); *see Coast to Coast Stores, Inc. v. Gruschus,* 100 Wn.2d 147, 164, 667 P.2d 619 (1983) (Dore, J., dissenting).

A plaintiff claiming a per se violation of the Consumer Protection Act must demonstrate the following: (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that plaintiff is within the class of people the statute seeks to protect. *Lidstrand,* 28 Wn. App. at 367; *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). Here, the trial court concluded that both FWCC and Yamaha violated the terms of RCW 46.70.005, the unfair motor vehicle business practices act, which declares that "the distribution and sale of vehicles in the state of Washington vitally affects the general economy of the state and the public interest and the public welfare, . . ." Defendants concede that pursuant to this statute, the sale of motorcycles legislatively has been declared to affect a public interest. However, they contend that, inasmuch as RCW 46.70.005 does not proscribe any specific activity, and there being no showing of a violation of any other pertinent statute, the trial court's conclusion that they violated the terms of the declaration of purpose provision of RCW 46.70.005 does not comport with the requisite elements of a per se violation of the Consumer Protection Act. Blake does not dispute this assertion and, in fact, contends that the court did not find, nor did he allege, that a per se violation of the Consumer Protection Act occurred. Rather, he contends that RCW 46.70.005 simply was used to show that defendants were engaged in a business legislatively declared to affect the public interest in order to establish an other than per se violation of the

Consumer Protection Act.

 We agree that RCW 46.70 was not violated. We note further that a "[v]iolation of the UCC is not a per se showing of public interest sufficient to bring a private action under the Consumer Protection Act." *Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 763, 649 P.2d 828 (1982). In order to establish a non–per se violation of the Consumer Protection Act, the alleged unfair or deceptive act or practice must have an impact on the public interest.

> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Haner,* 97 Wn.2d at 759. Guided by *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 361, 581 P.2d 1349 (1978), the trial court concluded that defendants committed unfair post–sale acts and that such are proscribed by the Consumer Protection Act. Blake contends that the trial court's "factual determination" that these acts by defendants were unfair is supported by sufficient evidence, and, therefore, should be upheld. We disagree.

 A finding that a defendant in a consumer protection act case did or did not engage in certain conduct resolves a factual issue and is reviewable under the substantial evidence test. *Grayson v. Nordic Constr. Co.,* 92 Wn.2d 548, 599 P.2d 1271 (1979); *Keyes v. Bollinger,* 31 Wn. App. 286, 640 P.2d 1077 (1982). However, "'[t]he determination of whether a particular statute applies to a factual situation is a conclusion of law, and not a finding of fact.'" *Keyes v. Bollinger,* 31 Wn. App. at 289, quoting *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 743–44, 551 P.2d 1398 (1976). Consequently, the question of whether particular actions rise to the stature of being "unfair" or "deceptive" is reviewable as a question of law.

■ We do not agree that FWCC and Yamaha's post-sale dealings with Blake rise to the stature of "unfair" dealing under the Consumer Protection Act. Although the Consumer Protection Act does not define the term "unfair," the Supreme Court has held that in order to be unfair or deceptive, conduct must have a tendency or capacity to deceive a substantial portion of the public. *Haner,* 97 Wn.2d at 759. Further, the act mentions sources to which Washington courts should look for guidance in construing its provisions. Among these are federal court interpretations of federal statutes dealing with matters similar to those involved in the Consumer Protection Act. RCW 19.86.920; *see Short v. Demopolis,* 103 Wn.2d 52, 56, 691 P.2d 163 (1984). The federal statute dealing with matters similar to those involved in the Consumer Protection Act is *section 5 of the Federal Trade Commission Act,* 15 U.S.C. § 45, which also prohibits unfair practices. To determine whether a practice or act is unfair, the Federal Trade Commission has established the following three criteria, which have been cited with approval by federal courts:

"(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common–law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

*FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972); *Spiegel, Inc. v. FTC,* 540 F.2d 287, 293 (7th Cir. 1976). According to the Federal Trade Commission, the most important of the above criteria for establishing unfairness is unjustified consumer injury. Before consumer injury can be found to be unjustified or "unfair," the injury to consumers must be substantial; it must not be outweighed by any countervailing factors; and the injury must be one that consumers reasonably could not have avoided. FTC letter of December 17,

1980, [1969–1983 Transfer Binder] Trade Reg. Rep. (CCH) ¶ 50,421; *see* 3 Washington State Bar Ass'n, *Commercial Law Deskbook*, "Washington Consumer Protection Act", § 27.5(4) (1982).

Here, the evidence does not support a conclusion that either FWCC or Yamaha engaged in activity that can be characterized as immoral, unethical, oppressive, or unscrupulous. In every respect prior to the commencement of this lawsuit by Blake, both FWCC and Yamaha acted properly in their attempts to fix the cycle and fulfill their warranty obligations, except that FWCC failed promptly to notify Blake that it probably had discovered the real problem with his cycle. However, FWCC did give notice of this fact to Yamaha, which in turn notified Blake within a few days and requested that he take the cycle to Tacoma Yamaha, a more convenient location for Blake than FWCC. Tacoma Yamaha did the warranty repair work at no charge to Blake. Thus, failure of FWCC immediately to notify Blake of its discovery caused little if any injury to Blake. Certainly he sustained no *substantial* injury. Nor could such failure to notify be characterized as having the capacity to deceive a substantial portion of the public. Nor does it appear to have the potential for repetition.

The events occurring after this lawsuit commenced, such as the "foul–up" involved in the delivery of the new cycle, also do not qualify as "unfair" acts.

There is no suggestion that failure to notify Blake that a new cycle was ready and waiting at FWCC to effectuate the agreed exchange was the result of anything but a breakdown in communications between defendants and their counsel. Although this did result in a technical violation of the settlement terms, such conduct hardly can be characterized as immoral, unethical, oppressive, or unscrupulous action. Clearly the breach of the settlement agreement does not involve a breach of a statutory obligation of good faith and fair dealing, as was the case in *Salois v. Mutual of Omaha Ins. Co., supra. See Pruitt v. Alaska Pac. Assur. Co.,* 28 Wn. App. 802, 626 P.2d 528 (1981). Moreover, in

*Nuttall v. Dowell,* 31 Wn. App. 98, 639 P.2d 832 (1982), the court expressly held that the Consumer Protection Act did not render unlawful a private breach of contract that did not occur in bad faith and did not violate the law. *See also Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 327–28, 617 P.2d 415 (1980) (mere refusal to allow rescission of a sales contract is not unfair, nor is the delivery of defective goods unfair when the dealer offers to repair the goods).

The defendants' failure to establish a joint account is also clearly not an "unfair" act. This failure apparently stemmed from defendants' inability to establish such an account, and was neither immoral, oppressive, nor unscrupulous, nor did it deceive or harm Blake by inducing him to act or refrain from acting to his detriment.[2]

Not only do we conclude that the events occurring after the lawsuit was commenced are not "unfair" within the meaning of the Consumer Protection Act, but we also conclude that such events do not satisfy the requisite element that such acts be "within the sphere of trade or commerce." *Haner,* 97 Wn.2d at 759. Once the lawsuit was filed, this matter was under the aegis of and subject to the control of the courts; as such, it was a private dispute.

In summary, we hold that Blake failed to establish the requisite elements for a recovery under the Consumer Protection Act. First, we find that neither defendant committed any acts which reasonably can be characterized as unfair or deceptive. Second, all of the events taking place after the lawsuit was commenced were within the private dispute–resolving province of the superior court; as such, defendants' conduct was not within the sphere of trade or commerce. Finally, none of the actions complained of affects the public interest because Blake sustained little, if any, harm and there is little, if any, potential for repetition.

---

[2]Although the point was not raised on this appeal, we have serious doubts as to a trial court's power to attach such a condition to the granting of a continuance, particularly in light of the circumstances here.

Thus, we reverse the court's award of damages under the Consumer Protection Act.

The order granting rescission is affirmed; the judgment for damages and attorney's fees is reversed.

WORSWICK, C.J., and ALEXANDER, J., concur.

Reconsideration denied May 13, 1985.

Review denied by Supreme Court July 26, 1985.