# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

UNIVERSITY OF WASHINGTON, )
                    )    No. 74736-3-I
            Respondent, )
                    )    DIVISION ONE
       v.              )
                    )    PUBLISHED OPINION
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY d/b/a GEICO )
Indemnity Company, )
                    )
            Appellant. )    FILED: September 11, 2017

TRICKEY, A.C.J. — The University of Washington obtained a jury verdict against Government Employees Insurance Company (GEICO) for violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. GEICO appeals, arguing that the trial court abused its discretion when it granted the University's motion to amend its complaint to add a CPA claim and erred as a matter of law when it allowed the University to even bring a CPA claim. GEICO also maintains that the trial court abused its discretion when it denied GEICO's motions for judgment as a matter of law, for a new trial, and remittitur; that the jury award was so excessive as to be the result of passion or prejudice; and that the University was not legally entitled to recover attorney fees incurred for pursuing its CPA claim. Finding no error, we affirm.

## FACTS

In March 2011, Kyle Murphy, a GEICO insured driver, and Officer Ruslan Sattarov, a University of Washington Police Department (UWPD) officer, were in a two-car accident in the University District of Seattle, Washington. Murphy drove his vehicle into an intersection with a green light as Officer Sattarov, responding to a call in his patrol car, entered on a red light. The cars collided. Officer Sattarov's car crashed into the storefront

of American Apparel, causing property damage.

Tyler Lennier was riding in Murphy's car, and UWPD Officer Stefan Pentcholov was Officer Sattarov's passenger. Officer Sattarov's vehicle injured two pedestrians, James Howard and Megatron Lawrence. Murphy's insurance policy had limits of $50,000 for property damage and $100,000 for bodily injury per person, up to $300,000 per occurrence.

GEICO assigned Andrea Kravitz to be its primary claims adjuster for the incident. The University assigned Wendy Winslow-Nason from its risk management department to handle the claims. Murphy, Lennier, Howard, Lawrence, and American Apparel all became claimants of GEICO.

In April 2011, Kravitz notified the claimants that GEICO had determined that Murphy bore 60 percent of the fault and the University bore 40 percent of the fault. But Kravitz sent UWPD a letter that stated that Murphy bore 40 percent of the fault and the University bore 60 percent of the fault. Kravitz did not immediately inform the University of this discrepancy.

Based on GEICO's representation that the University bore 60 percent of the fault, Winslow-Nason negotiated with Kravitz to split liability equally between GEICO and the University (the Agreement). The Agreement would apply to all personal injury and property damage claims. Both sides believed they were improving their position from 60 percent liability to 50 percent.

Winslow-Nason sent a confirming e-mail to Kravitz, stating, "This confirms that we have agreed to apportion liability 50/50 in regard to this loss."[1] Kravitz acknowledged the

---

[1] Report of Proceedings (RP) (Nov. 9, 2015) at 25.

2

e-mail and the Agreement in her claim file.

In June 2011, Zachary Kozma, a new GEICO claims adjuster assigned to the incident, faxed Winslow-Nason a document disclaiming all liability on behalf of GEICO until he had completed his investigation. The University received the Seattle Police Department's Case Investigation Report (CIR) on July 15, 2011. The CIR concluded that Officer Sattarov's actions were the proximate cause of the collision and attributed liability to the University.

On July 20, 2011, Winslow-Nason e-mailed Kozma in response to his disclaimer of liability with attached witness statement summaries from the CIR and a redacted copy of the CIR. Kozma confirmed the Agreement after receiving the requested information. It was not until October 2015 that GEICO discovered that Winslow-Nason had access to the complete CIR by July 15, 2011.[2]

The parties settled three of the outstanding claims under the Agreement. Winslow-Nason continued to evaluate the remaining claims under the assumption that the Agreement between the University and GEICO would apply. In March 2013, Winslow-Nason told Nathan Broderick, GEICO's new claims adjuster, that she valued Lennier's claims as up to $20,000, and that GEICO would be responsible for half of that value.

_____

[2] During a sidebar at trial, GEICO told the court that it had served the University with a disclosure request under the Freedom of Information Act and chapter 42.56 RCW and had received responsive documents on October 21, 2015, including the complete CIR and a memorandum indicating that Winslow-Nason had access to a partial copy of the CIR on July 15, 2011. GEICO argued that the University improperly withheld information showing that Officer Sattarov was solely at fault, which impacted GEICO's defense. GEICO had not previously raised this issue to the court. The University responded that GEICO had previously asserted and then withdrawn a material misrepresentation defense, that liability for the collision was not relevant to the contract formation issues in the case, and that Winslow-Nason had no duty to disclose the CIR because GEICO could have requested a copy from the Seattle Police Department. The trial court stated that GEICO's arguments regarding the CIR were raised extremely late and that they went to the liability of the parties and were irrelevant.

Winslow-Nason agreed to release Murphy from liability in exchange for GEICO reimbursing the University for the Lennier settlement under the Agreement, and Broderick stated that the Lennier settlement amount was acceptable. GEICO's next claims adjuster, Joshua Kipp, confirmed with Winslow-Nason that the University would handle the outstanding settlements and seek 50 percent reimbursement from GEICO.

In February 2014, Howard filed a lawsuit against GEICO and the University, and Kipp and Winslow-Nason discussed the possibility of jointly defending the suit. Kipp later told Winslow-Nason that GEICO wished to defend the suit with its in-house counsel, but that the parties would cooperate on damages equally.

In September 2014, Winslow-Nason settled Lawrence's personal injury claim for $19,500 and the University paid the settlement in full. GEICO refused to reimburse the University. GEICO then refused to honor the Agreement for the Howard and Lennier claims. In October 2014, Winslow-Nason learned from Murphy's lawyer that GEICO was taking the position that it was not liable at all for the incident.

The University sued GEICO in April 2015. The University alleged that the Agreement was a contract, that GEICO had breached the Agreement, and that the University was entitled to equitable relief. On October 14, 2015, the trial court granted the University's motion for leave to amend its complaint. On October 20, shortly before the trial date, the University filed its amended complaint, which added a claim for violation of the CPA. The University alleged that GEICO's repudiation of the Agreement was an unfair or deceptive act in trade or commerce that affected the public interest. GEICO filed an amended answer on October 28, 2015, which generally denied the University's new claim.

The trial began on November 4, 2015. Several of the University's claims, including its breach of contract and CPA claims, proceeded to a jury trial. The court reserved decision on the University's equitable claims until after trial. GEICO stipulated that its repudiation of the Agreement occurred in trade or commerce and affected the public interest.

The jury returned a verdict finding in part that the Agreement was a binding contract between the parties, that GEICO had breached the Agreement and caused the University $9,750 in damages, and that GEICO had violated the CPA and caused $300,000 in damages to the University. Relying on the evidence before the jury, the trial court ruled in favor of the University on its equitable claims.

The trial court denied GEICO's posttrial motion for new trial or remittur for the CPA claim, and awarded the University $495,033.75 in attorney fees incurred in pursuing its non-equitable claims.

GEICO appeals.

## ANALYSIS

### Motion for Leave to Amend Complaint

GEICO contends that the trial court abused its discretion when it granted the University's motion to amend its complaint to add a claim for violation of the CPA.[3] Because GEICO possessed most of the evidence underlying the University's CPA claim

---

[3] GEICO also briefly argues in its opening brief that it was prejudiced when the trial court denied its request for a continuance to conduct discovery, but does not offer legal authority supporting this argument. An issue raised in a party's opening brief but unsupported by legal authority is waived. RAP 10.3(a), (b). We conclude that GEICO has waived its assignment of error to the trial court's denial of its request for a continuance.

5

and the CPA claim relied on nearly identical evidence as the University's breach of contract claim, we disagree.

After a responsive pleading is served, a party may amend its pleading only by leave of the court or by written consent of the adverse party, and such "leave shall be freely given when justice so requires." CR 15(a). A party's response to the amended pleading is due within the shorter of "the time remaining for response to the original pleading or within 10 days after service of the amended pleading." CR 15(a). CR 15 is "designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" Caruso v. Local Union No. 690, 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (quoting United States v. Hougham, 364 U.S. 310, 316, 81 S. Ct. 13, 5 L. Ed. 2d 8 (1960)).

The court should deny a motion to amend a complaint only when the amendment would prejudice the nonmoving party. Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). Factors relevant to analyzing whether allowing an amendment would prejudice the nonmoving party include undue delay, unfair surprise, and jury confusion. Wilson, 137 Wn.2d at 505-06. A trial court's decision to grant or deny a motion for leave to amend is reviewed for an abuse of discretion. Wilson, 137 Wn.2d at 505.

The fact that an amendment may introduce a new issue is insufficient, by itself, to require denial of a motion to amend. Bowers v. Good, 52 Wash. 384, 386, 100 P. 848 (1909). Instead, the court examines whether a party would be "prepared to meet the new issue." Bowers, 52 Wash. at 386. If a new claim or issue is added through the amendment, similarities between the elements or evidence relied upon for the existing

and new claims weigh against a finding of prejudice. See, e.g., Kirkham v. Smith, 106 Wn. App. 177, 181, 23 P.3d 10 (2001).

In opposing the University's motion to add a claim for violation of the CPA, GEICO argued that the new claim was unsupported by facts or law. GEICO did not provide specific arguments that it would be prejudiced by the amendment; GEICO focused on the University's alleged lack of justification for the amendment and GEICO's cooperation during discovery.

The trial court did not abuse its discretion when it granted the University's motion to amend. GEICO was not prejudiced by undue delay because GEICO itself withheld the evidence underlying the University's CPA claim until late in the discovery process.[4] This included internal GEICO documents and correspondence, depositions of GEICO employees and witnesses, and the reneging adjustor's prior history of similar conduct. For a similar reason, GEICO cannot argue undue surprise, as it was aware of the evidence it held and it cannot rationally be surprised by the addition of a new claim relying on that evidence following its disclosure.

Further, the University's breach of contract and CPA claims relied on nearly identical testimony and evidence. In a breach of contract action, the plaintiff must prove that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged. Lehrer v. State, Dep't of Social & Health Servs., 101 Wn. App. 509, 516, 5 P.3d 722 (2000). To prevail on a private CPA claim, a plaintiff must establish that the defendant engaged in "(1) [an] unfair or deceptive act or practice; (2) occurring in

---

[4] In September 2015, Jon Morrone declared that recent discovery, including deposing relevant witnesses from both sides, revealed reasonable grounds to support a claim for promissory estoppel and violation of the CPA.

trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Breach of a private contract may affect the public interest and, thus, be actionable under the CPA. Hangman Ridge, 105 Wn.2d at 790.

The University's breach of contract and CPA claims both required a showing of damages and causation. GEICO stipulated that its act of repudiating the Agreement occurred in trade or commerce and affected the public interest. Thus, the only difference between the University's breach of contract and CPA claims was whether the breach of the Agreement was an unfair or deceptive act or practice within the meaning of the CPA. Because the unfair or deceptive practice element of the University's CPA claim was based on the breach of the Agreement and GEICO stipulated that its act occurred in trade or commerce and affected the public interest, we conclude that the difference between the elements of the claims is insufficient to show that GEICO would not be prepared to meet the new issue at trial.

GEICO argues that the trial court manifestly abused its discretion because the University filed its motion to amend after the discovery cutoff, the trial court refused to reopen discovery, the amended complaint expanded the damages available to the University, and the amendment was contrary to existing law. GEICO analogizes to In re Estate of Lowe, 191 Wn. App. 216, 361 P.3d 789 (2015), review denied, 185 Wn.2d 1019 (2016). In Lowe, a party filed a motion seeking court permission to file a second amended and supplemental petition less than a month before the start of trial. 191 Wn. App. at 223. The Court of Appeals noted that the party's motion was actually a motion to amend,

as it did not seek to include claims arising from transactions arising after the latest pleading. Lowe, 191 Wn. App. at 227. The Court of Appeals held that the trial court did not abuse its discretion in denying the party's motion, as the parties engaged in prolonged discovery and the motion was filed less than one month before trial. Lowe, 191 Wn. App. at 227-28.

GEICO's argument is not persuasive. Although both here and in Lowe a party moved to file an amended complaint close to the trial date after prolonged discovery, the present case is distinguishable. For example, Lowe did not involve an added claim that relied on nearly-identical evidence and was delayed due to the nonmoving party's own actions. Thus, we reject this argument.

GEICO argues that it was prejudiced by the addition of the CPA claim because it allowed the University to recover attorney fees and treble damages that would not have been available under its breach of contract claim. It does not offer legal authority in support of this argument. The fact that the University could recover attorney fees and damages if it prevailed on its new claim does not show that GEICO suffered from undue delay or unfair surprise, or that it would be unprepared to address the new claim at trial. Rather, these arguments pertain to the damages that would be available to the University if it prevailed on the merits of the claim. GEICO's unsupported arguments are insufficient to show that it was prejudiced by the new claims making treble damages and attorney fees available to the University.

GEICO also argues that it was prejudiced by the trial court's refusal to continue discovery on the newly-added claim or allow GEICO to bring motions addressing the claim. GEICO does not cite legal authority in support of this claim and does not connect

it to its argument that the trial court abused its discretion when it granted the University's motion to amend. We decline to address this argument. RAP 10.3(a)(6).

### Private CPA Claim

GEICO maintains that the trial court erred as a matter of law by allowing the University to bring a CPA claim against it because the University was not one of GEICO's insureds.[5] The University responds that it did not have to be an insured of GEICO to bring a private citizen CPA suit. Because anyone may bring a private CPA violation claim against a party who injures them and the University did not base its claim on GEICO's breach of the duty of good faith or insurance regulations, we conclude that the University was a proper party to bring a private CPA claim against GEICO.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The CPA allows "'[a]ny person who is injured in his or her business or property by a violation' of the act to bring a CPA claim." Panag v. Farmers Ins. Co., 166 Wn.2d 27, 39, 204 P.3d 885 (2009) (emphasis omitted) (quoting RCW 19.86.090). "'[P]erson' includes . . . all political subdivisions of the state." RCW 19.86.090.

"[V]iolations of the regulations applicable to [the insurance industry and the debt collection industry] implicate the public interest and constitute a per se violation of the CPA." Panag, 166 Wn.2d at 43. "[A private] CPA action may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought." Panag, 166 Wn.2d at 43-44; see Hangman Ridge, 105 Wn.2d at 780.

---

[5] GEICO raises a similar argument in support of its contention that the trial court erred in denying its motions for judgment as a matter of law, analyzed below. For the reasons stated in this section, we conclude that the trial court did not err.

10

The University brought its claim for violation of the CPA under chapter 19.86 RCW. The University is a political subdivision of the state of Washington, and it was alleging harm to its business or property based on GEICO's repudiation of the Agreement. Thus, the University was a proper party to bring a private CPA suit against GEICO.

GEICO argues that only an insured may bring a claim of bad faith against an insurance company. GEICO relies on the rule that third party claimants may "not sue an insurance company directly for [an] alleged breach of [the] duty of good faith under a liability policy." Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 391, 715 P.2d 1133 (1986); WAC 284-30-300 through -600. Similarly, a "[CPA] claim against an insurance company for breach of its duty to exercise good faith under RCW 48.01.030 is limited to the insured." Green v. Holm, 28 Wn. App. 135, 137, 622 P.2d 869 (1981); see also Panag, 166 Wn.2d at 43 n.6 ("Only an insured may bring a CPA claim for an insurer's breach of its statutory duty of good faith.").

The cases cited by GEICO do not apply to private CPA claims.[6] The University brought a private CPA claim against GEICO. The trial court did not allow the University to pursue a per se CPA action for breach of insurance claims handling regulations. And the University did not proceed on a bad faith theory under the CPA. Rather, the University brought its claim for violation of the CPA under chapter 19.86 RCW. Thus, the University did not have to be an insured of GEICO in order to bring its private CPA claim. We conclude that the University was a proper party to bring a private CPA claim against GEICO.

---

[6] In its reply brief, GEICO argues that stare decisis requires a finding in favor of GEICO on whether the University is a proper party to bring a CPA violation claim. Because GEICO raises this for the first time in its reply brief, we decline to reach this argument. Cowiche Canyon Conservatory v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## Judgment as a Matter of Law

GEICO argues that the trial court erred when it denied its motions for judgment as a matter of law. Specifically, it argues that the trial court should have dismissed the University's CPA claim because the University did not present evidence showing that GEICO engaged in an unfair or deceptive act or practice or that the University's business or property was damaged. Because substantial evidence was presented that could sustain a verdict for the University, we disagree.

"Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997); CR 50(a)(1). A party seeking judgment as a matter of law may submit a motion at any time before submission of the case to the jury. CR 50(a)(2). If the court does not grant a motion for judgment as a matter of law at the close of the evidence, the movant may renew its motion for judgment as a matter of law following the jury's verdict. CR 50(b).

This court reviews an order on a motion for judgment as a matter of law de novo, and applies the same standard as the trial court. See Schmidt v. Coogan, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). A motion for judgment as a matter of law admits the truth of the opponent's evidence and all reasonable inferences that can be drawn from it. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wn.2d 50, 98, 882 P.2d 703 (1994) (quoting Douglas v. Freeman, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991)).

The CPA prohibits unfair or deceptive acts or practices in trade or commerce. RCW 19.86.020. "Any person who is injured in his or her business or property by a

violation of [the CPA] . . . may bring a civil action in superior court" for damages. RCW 19.86.090. To prevail in a private CPA action, a plaintiff must establish "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge, 105 Wn.2d at 780.

*Unfair or Deceptive Act or Practice*

GEICO asserts that the University presented no evidence that GEICO engaged in an unfair or deceptive act or practice.[7] Because GEICO's repudiation of the Agreement and Kravitz's misrepresentation to the University could both be unfair or deceptive acts or practices, we disagree.

A plaintiff is not required to show that the defendant intended to engage in unfair or deceptive practices or that actual deception occurred. Keyes v. Bollinger, 31 Wn. App. 286, 292, 640 P.2d 1077 (1982); Dwyer v. J.I. Kislak Mortg. Corp., 103 Wn. App. 542, 546-47, 13 P.3d 240 (2000). To be actionable under the CPA, a defendant's act or practice "need have only a tendency or capacity to deceive a substantial portion of the purchasing public." Keyes, 31 Wn. App. at 292.

Breach of a private contract may affect the public interest, and thus be actionable under the CPA, if additional plaintiffs "have been or will be injured in exactly the same fashion." Hangman Ridge, 105 Wn.2d at 790; see also Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wn.2d 396, 406-07, 759 P.2d 418 (1988) (seller's practices, which were custom and usage in the trade, led to sale of unsound horses and thus were sufficient to

---

[7] GEICO contends that the University did not present specific evidence that GEICO's acts or omissions affected policyholders, that GEICO did not have enough time for effective discovery, and that the University asserted a basis for its CPA claim in its opening statement that it did not later support at trial. GEICO does not offer significant argument in support of these assertions.

show that the seller's acts had the capacity to deceive a substantial portion of the public).

The trial court did not err when it denied GEICO's motions for judgment as a matter of law based on the University's alleged failure to offer evidence showing an unfair or deceptive act or practice of GEICO. Viewing the evidence in the light most favorable to the University, both GEICO's repudiation of the Agreement and Kravitz's misrepresentation of the apportionment of liability between the parties had the capacity to deceive a substantial portion of the public.

Arrangements similar to the Agreement are common in the insurance industry. GEICO offered testimony that it had previously altered agreements during the course of settling claims, and that it considered the Agreement an "idea."[8] But the Agreement does not contain any language allowing later modification. GEICO does not offer evidence beyond its self-serving testimony to show that the parties intended or knew that the Agreement could be unilaterally modified or repudiated over the course of the settlements. Therefore, although it may be the case that such arrangements are common in the insurance industry, when viewing the evidence in the light most favorable to the University, GEICO has not shown that its repudiation was not an unfair or deceptive practice in the insurance industry.

Winslow-Nason and Kravitz entered into the Agreement on April 28, 2011, which was confirmed via an e-mail reading, "This confirms that we have agreed to apportion liability 50/50 in regard to this loss."[9] This does not allow either party to unilaterally abandon the Agreement. GEICO's repudiation of the contract after larger claims were filed had the capacity to deceive the University and a substantial portion of the public.

---

[8] RP (Nov. 12, 2015) at 468.
[9] RP (Nov. 9, 2015) at 25; RP (Nov. 10, 2015) at 158.

The record contains substantial evidence to support the University's argument that GEICO's repudiation of the Agreement was an unfair or deceptive act or practice in violation of the CPA. Furthermore, the repudiation of the Agreement, if allowed, would harm future plaintiffs in exactly the same fashion. Thus, the breach of the Agreement, although arguably a private contract, would affect the public interest and may, therefore, support a CPA violation claim.

Similarly, Kravitz's misrepresentation could form the basis of an unfair or deceptive act or practice actionable under the CPA.[10] Citing to the testimony of Winslow-Nason, GEICO argues that a reasonable jury could not conclude that the University had established that Kravitz's misrepresentation was a basis for a CPA violation. But Kravitz's misrepresentation was sufficient to cause the University to enter into a liability-sharing agreement that apportioned more liability to itself than GEICO had determined was appropriate. Because this type of misrepresentation had the capacity to deceive and could harm future plaintiffs in the same fashion, it serves as an additional basis that the jury could use to find that GEICO had engaged in an unfair or deceptive act or practice in violation of the CPA.

GEICO takes the position that its business decisions, standing alone, are insufficient for establishing an unfair or deceptive act or practice under the CPA.

---

[10] In its reply brief, GEICO argues that "reasonable minds could reach but one conclusion: that Mrs. Kravitz made a typographical error that was remedied less than two days later on April 14, 2011, when the University received a follow up letter from GEICO [showing the correct liability split]." Reply Br. of Appellant at 12 (citing RP (Nov. 17, 2015) at 668)). This does not address why Winslow-Nason agreed to, and repeatedly stood by, the Agreement splitting liability evenly between the University and GEICO. Taking the evidence in the light most favorable to the University, Kravitz's misrepresentation was not a scrivener's error and the jury could find that this was sufficient to show that GEICO engaged in an unfair or deceptive practice. The trial court did not err in allowing the jury to consider the University's CPA claim.

GEICO cites a Washington Pattern Jury Instruction in support of this argument, which states that the CPA does not prohibit acts or practices that are reasonable to developing business. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 310.02, at 31-32 (6th ed. Supp. 2013) (WPI) (based on RCW 19.86.920). The comments to the instruction state that an act or practice is unfair if it is likely to cause substantial injury to consumers and is not reasonably avoidable or outweighed by countervailing benefits. WPI 310.02, cmt. at 32. In its reply brief, GEICO argues that its repudiation of the Agreement was reasonably related to the development and preservation of its business because its later investigations showed that it was not 50 percent at fault.

"The pattern [jury] instructions are not authoritative primary sources of the law" and are not binding on trial courts. WPI 010, at 3 (6th ed. 2012). GEICO does not offer legal authority in support of this argument beyond the pattern jury instructions. Moreover, GEICO does not credibly establish how its repudiation of the Agreement was reasonably related to developing its business, would not result in substantial injury to consumers, or was outweighed by its resulting benefits. This argument is unpersuasive.

GEICO contends that the University acted unfairly or deceptively when it failed to disclose the entire Seattle Police Department CIR in a timely manner.[11] If GEICO had brought its own CPA claim, or some other claim, this could be evidence against the University. But since GEICO did not receive the CIR until well after it repudiated the Agreement, it could not have been a justification for GEICO's repudiation and, therefore,

---

[11] When it brought this argument to the trial court in the middle of trial, the trial court noted that GEICO was not asking for any remedy other than possibly having more latitude to cross-examine Winslow-Nason. And, as noted above, the trial court barred argument about the CIR report because it was irrelevant to the issues presented in the case.

16

is not relevant to the University's claim.

*Injury*

GEICO argues that the University did not present evidence showing that it had suffered an injury proximately caused by GEICO through alleged unfair or deceptive practices. Because the record contains substantial evidence or a reasonable inference that GEICO's practices caused the University to bear the full cost of the Lawrence settlement, in addition to other expenses, we disagree.

Injury to property or business is broadly construed, and is not restricted to commercial or business injury. Keyes, 31 Wn. App. at 296. Even minimal injury is sufficient to meet the damages element of a CPA claim. Mason v. Mortg. America, Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990). Costs incurred in investigating an unfair or deceptive act are sufficient to establish injury. State Farm Fire & Cas. Co. v. Huynh, 92 Wn. App. 454, 470, 962 P.2d 854 (1998); Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wn. App. 553, 563-64, 825 P.2d 714 (1992) (inability to tend to store as normal due to defendant's unfair or deceptive acts was sufficient to support an inference that some injury occurred).

Winslow-Nason settled the Lawrence claim for $19,500 and the University paid the settlement in full. GEICO refused to reimburse the University in accordance with the Agreement. Therefore, the University incurred a cost of $9,750 that it had expected would be paid by GEICO. The jury unanimously found that this was a breach of the Agreement and awarded $9,750 to the University in damages. GEICO does not challenge the jury's verdict. This alone is sufficient to show that GEICO's repudiation of the Agreement

17

caused an injury to the University.[12] In addition, after GEICO repudiated the Agreement, Winslow-Nason had to spend time and effort on the Howard and Lennier claims instead of attending to her normal duties. Therefore, there was substantial evidence or a reasonable inference on the injury element of the CPA claim to sustain a verdict for the University.

GEICO argues that the University may not premise its CPA claim on GEICO's conduct during the litigation between GEICO and the University, analogizing to Blake v. Federal Way Cycle Center, 40 Wn. App. 302, 698 P.2d 578 (1985). In Blake, the plaintiff argued that the defendants' conduct after the lawsuit was filed supported its CPA violation claim. 40 Wn. App. at 311-12. The court rejected this argument, holding that conduct during litigation was within the purview of the court, and did not occur within trade or commerce. Blake, 40 Wn. App. at 312.

Blake is inapplicable to the University's CPA claim against GEICO. The University's CPA claim is primarily premised on GEICO's repudiation of the Agreement and the damages the University sustained as a result of having to settle or defend claims by itself. The University did not base its CPA violation claim on any of GEICO's actions taken after the commencement of this lawsuit.

*Causation*

GEICO briefly argues that the University did not present sufficient evidence that GEICO's unfair or deceptive act or practice caused the University's injury.

---

[12] The University also argues that it incurred additional burdens and expenses defending itself in the Howard and Lennier claims. Its citation to the record does not support this position. During direct examination of Shari Spung, a director of the University's claims department, Spung appears to begin to say that the University incurred significant expenses defending claims arising from this case. A defense objection to this testimony was raised and sustained.

A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury. Indoor Billboard/Wash. Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 78, 170 P.3d 10 (2007).

GEICO focuses on Kravtiz's alleged misrepresentation, and argues that there is insufficient evidence to show a causal connection between this misrepresentation and Winslow-Nason's alleged loss of productivity. This misconstrues both Kravitz's misrepresentation as the only unfair or deceptive act or practice and Winslow-Nason's lack of productivity as the only injury, and also ignores other avenues of causation.

The University argued that GEICO engaged in unfair or deceptive acts or practices when it repudiated the Agreement *and* when Kravitz misrepresented the liability apportionment to the University. Further, as discussed above, GEICO's repudiation caused the University to bear settlement costs that it otherwise would not have incurred. Winslow-Nason also had to take time away from her normal duties to defend claims that would have fallen within the scope of the Agreement. The fact that the evidence may not show a causal connection directly from Kravitz's misrepresentation to Winslow-Nason's lost productivity does not negate the other causal connections between GEICO's unfair or deceptive act and the University's injury. Thus, the record contains substantial evidence or a reasonable inference that GEICO's actions caused the University harm.

*Public Interest*

GEICO argues that the University failed to show that any act or omission by GEICO affected the public interest, such that there was a real and substantial potential for repetition. This argument is unpersuasive, as GEICO stipulated that any alleged act or practice done by GEICO affected the public interest.

19

In sum, the trial court did not err when it denied GEICO's motions for judgment as a matter of law on the University's CPA claim. The record contains evidence, viewed in the light most favorable to the University as the nonmoving party, of GEICO's unfair or deceptive acts or practices and the injuries those acts or practices caused. We conclude that the trial court properly denied GEICO's motions for judgment as a matter of law on the University's CPA claim.

## Motion for New Trial

GEICO argues that the trial court abused its discretion when it denied GEICO's motion for a new trial. Specifically, GEICO argues that the trial court committed an error of law that prejudiced GEICO when it permitted the University to add its CPA claim immediately prior to trial.

A court may vacate a verdict and grant a new trial if any of a number of causes that materially affect the rights of a party occur, including "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial." CR 59(a)(1).

A trial court's order on a motion for a new trial is reviewed for an abuse of discretion. Smith v. Orthopedics Int'l Ltd., P.S., 170 Wn.2d 659, 664, 244 P.3d 939 (2010).

As discussed above, the trial court did not abuse its discretion when it allowed the University to amend its complaint to add a claim for violation of the CPA. For the same reasons, GEICO is not entitled to a new trial based on the trial court's allowing the University to amend its complaint to add a claim under the CPA.

Motion for Remittitur

GEICO argues that the trial court abused its discretion when it denied GEICO's motion for remittitur. Specifically, GEICO argues that the award was a "direct result of prejudice caused by the trial court's prior errant discovery and evidentiary rulings," and the University's incitement of passion in the jury.[13] Because there is no indication that the jury's award was based on passion or prejudice, we disagree.

"A claimant has the burden of proof on the amount of damages and must come forward with sufficient evidence to support a damages award." Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 715-16, 315 P.3d 1143 (2013). A trial court's "use of remittitur is, in effect, the result of a legal conclusion that the jury's finding of damages is unsupported by the evidence." Sofie v. Fibreboard Corp., 112 Wn.2d 636, 654, 771 P.2d 711 (1989).

There is a strong presumption in favor of a jury's determination of damages. Sofie, 112 Wn.2d at 654; see also RCW 4.76.030. "A judge can only reduce a jury's damages determination when it is, in light of this strong presumption, wholly unsupported by the evidence, obviously motivated by passion or prejudice, or shocking to the court's conscience." Sofie, 112 Wn.2d at 654-55.

"Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable." Bingaman v. Grays Harbor Cmty. Hosp., 103 Wn.2d 831, 836, 699 P.2d 1230 (1985). A party may appeal to the jury to act as a "conscience of the community," unless the statement is designed to inflame the jury. Miller v. Kenny, 180 Wn. App. 772, 816, 325 P.3d 278 (2014).

---

[13] Appellant's Br. at 39.

21

An order denying a motion for remittitur is reviewed for an abuse of discretion, and the appellate court will not disturb the jury's award of damages unless it is "'outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as a result of passion or prejudice.'" Bunch v. King County Dep't of Youth Servs., 155 Wn.2d 165, 174-75, 116 P.3d 381 (2005) (quoting Bingaman, 103 Wn.2d at 835).

Here, the jury's determination of damages was based on evidence in the record. The jury awarded the University $300,000 in damages for GEICO's violation of the CPA. GEICO's policy limit for bodily injury liability for the entire occurrence was $300,000. The University offered testimony describing the number of persons injured and the likelihood that the claims would require significant investigation. GEICO's repudiation of the Agreement forced the University to face the Howard and Lennier lawsuits alone, rather than being reimbursed by GEICO. Thus, the record contains evidence upon which the jury could base its award for GEICO's violation of the CPA.

Further, the jury's award is not unmistakably the result of passion or prejudice. GEICO relies on the alleged lack of evidence offered by the University to argue that the jury's award must have been based on passion or prejudice. As discussed above, evidence was offered to support the jury's award of damages to the University for GEICO's violation of the CPA. Although the University asked the jury to hold entities like GEICO accountable, this is insufficient to rise to the level of being specifically designed to inflame the jury. The jury's award was not so manifestly the result of passion or

22

prejudice to merit a new trial based on an excessive damages award. We conclude that the trial court did not abuse its discretion when it denied GEICO's motion for remittitur.[14]

## Attorney Fees Award

GEICO argues that the attorney fees awarded to the University on its CPA claim had no legal basis. Because the University was entitled to recover its attorney fees at trial under the CPA, we disagree.

A person injured by a violation of the CPA may recover his or her actual damages and also the costs of the suit and reasonable attorney fees. RCW 19.86.090. "A determination of reasonable attorney fees begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Miller, 180 Wn. App. at 820. A lodestar amount may be adjusted based on "the contingent nature of success, and the quality of work performed." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 598, 675 P.2d 193 (1983).

GEICO does not assign error to the trial court's findings of fact underlying its attorney fee award. Unchallenged findings of fact are verities on appeal. State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997).

A trial court's award of attorney fees is reviewed for abuse of discretion. Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

---

[14] GEICO also asks this court to grant it a new trial under Cr 59(a)(5), (7) and RCW 4.76.030 if it concludes that the jury's damage award was unmistakably the result of passion or prejudice. A court may vacate a verdict and grant a new trial if the damages awarded are "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." CR 59(a)(5); see also RCW 4.76.030. This court gives weight and deference to the trial court's discretion in denying a new trial based on a claim of excessive damages, and will rarely change a jury's award. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 330, 858 P.2d 1054 (1993). For the same reasons analyzed in this section, the jury's damage award was not unmistakably the result of passion or prejudice. We decline to grant GEICO a new trial on this ground.

The University petitioned the trial court for reasonable attorney fees and costs under RCW 19.86.090. The trial court found that the University was entitled to recover reasonable attorney fees. The University prevailed on its CPA claim, as the jury unanimously found that GEICO's deceptive or unfair conduct proximately caused it damages. The trial court found that counsel for the University presented reasonable market rates, spent substantial time on the litigation, and could not segregate the time spent on the breach of contract and CPA claims. The trial court found that the University was entitled to a multiplier of 1.5 because the case was "very risky" and counsel for the University forwent more lucrative work to develop strong evidence in support of their client.[15] The trial court awarded a total attorney fees award of $495,033.75.

The trial court appropriately awarded reasonable attorney fees to the University under RCW 19.86.090. Under the statute, the University prevailed on its CPA claim against GEICO when the jury returned a unanimous verdict in its favor. The University was entitled to recover its reasonable attorney fees under the statute. We conclude that the trial court did not manifestly abuse its discretion when it considered the reasonableness of the offered market rates, the time spent on the case, the intertwined nature of the claims, and the factors justifying its use of a multiplier in calculating its attorney fee award.

### Attorney Fees on Appeal

The University requests its attorney fees on appeal incurred in defending the judgment against GEICO. "Attorneys' fees on appeal are recoverable under the [CPA]." Fisons Corp., 122 Wn.2d at 336. The present appeal focuses on the University's CPA

---

[15] Clerk's Papers at 6979.

claim against GEICO. The University has successfully defended its position in the appeal and has properly requested attorney fees pursuant to RAP 18.1(b). We award the University its attorney fees on appeal.

Affirmed.

_Trickey, A.C.J._

WE CONCUR:

_Spearman, J._                    _Dwyer, J._